STARBRITE DISTRIBUTING, INC v
EXCELDA MANUFACTURING COMPANY

Docket Nos. 103536, 103563. Argued November 13, 1996 (Calendar No. 9).
    Decided May 13, 1997. Rehearing denied 455 Mich 1201.

Starbrite Distributing, Inc., a Florida corporation, brought an action in
    the Livingston Circuit Court against Excelda Manufacturing Com-
    pany, a Michigan corporation, and P. D. George Company, a Dela-
    ware corporation doing business in Missouri, alleging breach of
    contract by Excelda and breaches of various warranties by both
    Excelda and P. D. George. The action arose as a result of a defect
    in concentrated teak oil sold by P. D. George to Excelda F.O.B., St.
    Louis, Missouri. Excelda diluted and packaged the oil for shipment
    to Starbrite. Excelda initiated a cross-claim against P. D. George,
    which moved for summary disposition on the basis of lack of lim-
    ited personal jurisdiction. The court, Stanley J. Latreille, J., denied
    the motion. The Court of Appeals, McDONALD, P.J., and TAYLOR and
    HOEKSTRA, JJ., reversed, holding that there was a lack of personal
    jurisdiction (Docket No. 161248). Excelda and Starbrite appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
    MALLETT, and Justices BRICKLEY and BOYLE, the Supreme Court held:

F.O.B. shipping terms are not dispositive of whether the defendant
    entered into a contract for materials to be furnished in Michigan.
    P. D. George had sufficient minimum contacts with Michigan to
    permit exercise of limited personal jurisdiction over it.

1. For purposes of the long-arm statute, F.O.B. shipping terms are
    not dispositive of whether a contract was made for services to be
    performed or for materials to be furnished in Michigan. In this
    case, the long-arm statute was satisfied because P. D. George
    entered into a contract for materials to be furnished in Michigan
    because it delivered the goods it manufactured to a common car-
    rier in St. Louis, specifying that the goods should be shipped to a
    specific Michigan address.

2. In determining whether sufficient minimum contacts exist
    between a defendant and Michigan to support Michigan's exercise
    of limited personal jurisdiction, a court must find: that the defend-
    ant purposefully availed itself of the privilege of conducting activi-
    ties in Michigan so as to invoke the benefits and protections of this

state's laws, that the cause of action arose from the defendant's activities in the state, and that the defendant's activities were so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. The contacts should not be random, fortuitous, or attenuated.

3. In this case, P. D. George's contacts with Michigan were not random, fortuitous, or attenuated. It deliberately sold and arranged for the shipping of teak oil to Excelda. Under this business relationship, it created continuing obligations between itself and Excelda, availing itself of the privilege of conducting business in Michigan, and shielding its activities through the benefits and protections of the laws of Michigan. Thus, it is presumptively reasonable to require P. D. George to submit to the burdens of litigation in Michigan courts. The cause of action arose from the defendant's activities in Michigan, and was for breach of contract that arose from the defendant's contact with this state, i.e., the shipping of defective goods into Michigan. P. D. George does not present a compelling case that subjecting it to Michigan jurisdiction would be unreasonable or unfair.

Reversed and remanded.

Justice WEAVER, joined by Justice RILEY, concurring in part and dissenting in part, stated that the facts of this case do not support a finding of sufficient minimum contacts to assert personal jurisdiction over P. D. George Company. The evidence did not establish that P. D. George purposely availed itself of the benefits of Michigan law; rather, its contacts were minimal and incidental and, thus, insufficient to satisfy the requirements of the Due Process Clause for exercising personal jurisdiction over a foreign corporation.

Justice KELLY took no part in the decision of this case.

211 Mich App 475; 536 NW2d 558 (1995) reversed.

*Harris & Literski* (by *Charles W. Widmaier*) for Starbrite Distributing, Inc.

*Alan J. Czekaj* for Excelda Manufacturing Company.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *C. Mark Hoover* and *Charyn K. Hain*); *Popham, Haik, Schnobrich & Kaufman, Ltd.*, of counsel (by *John Golden* and *Paul L. Nettleton*), for P. D. George Company.

CAVANAGH, J. The State of Michigan may exercise limited personal jurisdiction under its long-arm statute if two things are established. First, the rules of statutory construction must support the exercise of jurisdiction over the defendant. Second, the exercise of limited personal jurisdiction may not violate the Due Process Clause of the Fourteenth Amendment. *Jeffrey v Rapid American Corp*, 448 Mich 178, 184-185; 529 NW2d 644 (1995).

This case presents two issues for our review. First, we must decide whether the Court of Appeals erred in holding that the delivery of goods F.O.B. St. Louis, Missouri, was dispositive of whether the defendant, P. D. George, entered into a contract for materials to be furnished in Michigan pursuant to subsection 5 of the long-arm statute. MCL 600.715(5); MSA 27A.715(5). Second, if we find that subsection 5 was satisfied, then we must also decide whether the Court of Appeals erred in holding that the defendant had insufficient minimum contacts with Michigan to support its exercise of limited personal jurisdiction.

We hold that F.O.B. shipping terms are not dispositive of whether the defendant entered into a contract for materials to be furnished in Michigan. The statutory language "furnishing" is broader than "delivery," and in this case, P. D. George entered into a contract for materials to be furnished in Michigan. Also, we hold that the defendant had sufficient minimum contacts with Michigan to permit exercise of limited personal jurisdiction over the defendant.

### I. FACTS AND PROCEEDINGS

P. D. George Company, a Delaware corporation doing business in Missouri, sold Golden Teak Oil to

Excelda Manufacturing Company, a Michigan corporation, at the instigation of Robert Pollack of Robert's Innovations, located in New Jersey. The concentrated teak oil, a chemical surface coating used in the marine industry, was shipped to Excelda F.O.B. St. Louis, Missouri. Excelda diluted the chemicals and packaged them for shipment to Starbrite Distributing, Inc., a Florida corporation.

A defect arose in the concentrate that affected its quality and shelf life. Starbrite sued Excelda and P. D. George in Michigan,[1] alleging breach of contract by Excelda and breaches of various warranties by both Excelda and P. D. George. In defending the action by Starbrite, Excelda initiated a cross-claim against P. D. George. In response, P. D. George moved for summary disposition pursuant to MCR 2.116(C)(1) on the basis of a lack of limited personal jurisdiction. Starbrite and Excelda claimed that jurisdiction existed pursuant to MCL 600.715; MSA 27A.715, Michigan's long-arm statute.

The circuit judge denied P. D. George's motion for summary disposition. P. D. George appealed, and the Court of Appeals reversed, holding that there was a lack of personal jurisdiction over P. D. George. Excelda and Starbrite both sought leave to appeal to this Court, which we granted.

## II. THE LONG-ARM STATUTE

Michigan's long-arm statute provides:

---

[1] The issues in this case pertain to the lawsuit filed in Michigan. However, Starbrite initially sued P. D. George in federal district court in Florida. That court dismissed the suit on the basis of lack of jurisdiction. Starbrite then sued Excelda, which filed a third-party claim against P. D. George in the same court. The court also dismissed this suit on the basis of a lack of jurisdiction.

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) *Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.* [MCL 600.715; MSA 27A.715 (emphasis added).]

In the lower courts and here, P. D. George argued that subsection 5 of the long-arm statute was not satisfied. F.O.B. is a UCC delivery term.[2] When the term is F.O.B. point of shipment, the seller bears the expense and risk of putting the goods in the possession of the carrier.[3] Once the goods are in the possession of the carrier, title passes to the purchaser. Thus, P. D. George argued that once the title to the goods passed to the carrier, the goods were furnished in Missouri, and could not be furnished in Michigan.

In denying P. D. George's motion for summary disposition on the basis of a lack of personal jurisdiction, the circuit judge stated:

---

[2] The Uniform Commercial Code was adopted in Michigan. MCL 440.2319; MSA 19.2319.

[3] MCL 440.2319(1)(a); MSA 19.2319(1)(a).

> I think the statute does talk about furnishing and entering into a contract to furnish materials in this state and I think that's what happened here, as I understand the facts. It's sufficient to meet the requirements of the statute as well as any due process question. It looks as if it was not a single delivery but an ongoing arrangement and I further believe that the question of the U.C.C. application is not dispositive of this situation. I think that the U.C.C. had other concerns in mind, certainly not jurisdictional ones.

When P. D. George appealed, the Court of Appeals reversed. 211 Mich App 475; 536 NW2d 558 (1995). It concluded that the trial court erred in finding that the delivery term was not dispositive of the issue of the place of delivery. It reasoned that because Excelda agreed that title transferred to it when P. D. George delivered the goods to the carrier in St. Louis, the goods were furnished in Missouri, and could not be furnished in Michigan.

We agree with the circuit judge that the UCC delivery term does not control because the UCC is concerned with issues such as who bears the expense of shipping and the risk of loss in the transfer of goods. These are concerns separate from whether the goods are furnished in Michigan for purposes of the long-arm statute. We agree with Starbrite and Excelda that furnishing is a broader concept than the simple concept of delivery. If the Legislature intended place of delivery to be dispositive of where the goods were furnished, then the Legislature would have used that term, rather than furnishing. Thus, we hold that F.O.B. shipping terms are not dispositive of whether the defendant entered into a contract for services to be performed or for materials to be furnished in Michigan. Here, the long-arm statute was satisfied because the defendant entered into a contract for materials to

be furnished in Michigan. It delivered the goods it manufactured to a common carrier in St. Louis, specifying that the goods should be shipped to a specific Michigan address.[4]

### III. DUE PROCESS

After determining that subsection 5 of the long-arm statute was satisfied, we next must consider whether the defendant had sufficient minimum contacts with Michigan to support the exercise of limited personal jurisdiction. As noted above, the circuit judge believed that the Due Process Clause was not violated. However, the Court of Appeals held that the exercise of personal jurisdiction in these circumstances would violate the Due Process Clause.

As this Court stated in *Witbeck v Bill Cody's Ranch Inn*, 428 Mich 659, 666; 411 NW2d 439 (1987), "[t]he Due Process Clause of the Fourteenth Amendment 'does not contemplate that a state may make binding a judgment in personam against an individual or a corporate defendant with which the state has no contacts, ties, or relations.' " Quoting *International Shoe Co v Washington*, 326 US 310, 319; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945). The Court noted that the constitutional inquiry "is whether the defendant purposefully established 'minimum contacts' in the forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Id.*, quoting *International Shoe* at 316. See

---

[4] On appeal, Starbrite and Excelda also argued that subsection 1 of the long-arm statute was satisfied. Because we hold that subsection 5 was met, we decline to address the decision of the Court of Appeals regarding this issue.

*Burger King Corp v Rudzewicz,* 471 US 462, 474; 105 S Ct 2174; 85 L Ed 2d 528 (1985).

In determining whether sufficient minimum contacts[5] exist between a defendant and Michigan to support Michigan's exercise of limited personal jurisdiction, the Court must apply a three-pronged test:

> First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Jeffrey, supra* at 186, quoting *Mozdy v Lopez,* 197 Mich App 356, 359; 494 NW2d 866 (1992).]

Considering the first prong, we must determine whether the defendant purposely availed itself of the privilege of exploiting Michigan business opportunities. In *Jeffrey, supra,* this Court explained:

> " '[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be

---

[5] In *Jeffrey, supra* at 186, this Court stated:

The requirement of minimum contacts serves two purposes: (1) it protects a defendant from litigating in distant or inconvenient forums, and (2) it ensures that a state does not extend its judicial power beyond the limits imposed on all states by our federal system of government. *World-Wide Volkswagen v Woodson,* 444 US 286, 292; 100 S Ct 559; 62 L Ed 2d 490 (1980). Of the two, however, the overriding purpose of due process is to protect the individual liberty interests encompassed within its scope as opposed to furthering concepts of federalism. *Burger King v Rudzewicz,* 471 US 462, 472, n 13; 105 S Ct 2174; 85 L Ed 2d 528 (1985). Nevertheless, both purposes work in tandem to give our legal system a degree of predictability that provides potential defendants with the opportunity to structure their affairs so as to provide some assurance regarding where they may be haled into court.

done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." [*Id.* at 187-188, quoting *Khalaf v Bankers & Shippers Ins Co*, 404 Mich 134, 153-154; 273 NW2d 811 (1978).]

However, the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . ." *Burger King* at 475 (citations omitted). The Supreme Court in *Burger King* explained that

> where the defendant "deliberately" has engaged in significant activities within a State, *or has created "continuing obligations" between himself and residents of the forum,* he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. [*Id.* at 475-476 (citations omitted).]

Applied to the facts of this case, P. D. George's contacts with Michigan were not "random," "fortuitous," or "attenuated." P. D. George deliberately sold and arranged for the shipping of teak oil to Excelda.[6] Although it did not actively solicit business in Michigan, and did not maintain a physical presence in

---

[6] The dissent's assertions that "P. D. George had no choice over who would dilute the primary mix that it supplied," and that Excelda forced "P. D. George to send its teak oil to Excelda, which is located in Michigan," are baseless. *Post*, pp 317-318. Even if the original agreement was changed, Starbrite still agreed to ship the product to Michigan. It certainly was not forced to do so. Rather, it made a business decision to do so.

Michigan,[7] representatives of P. D. George made telephone calls to Excelda regarding the ordering and purchasing of the concentrated teak oil[8] before the time that the problem with the defective goods arose. Also, P. D. George, for several months, delivered orders for the teak oil to a common carrier for shipment to Michigan.[9] Under this business relationship, P. D. George created continuing obligations between itself and Excelda. It has availed itself of the privilege of conducting business in Michigan, and its activities were shielded by the benefits and protections of the laws of Michigan. Thus, it is presumptively reasonable to require P. D. George to submit to the burdens of litigation in Michigan courts, and P. D. George should have anticipated being haled into court here.[10]

---

[7] As this Court stated in *Jeffrey*:

Jurisdiction may not be avoided simply because the corporate defendant has never physically been present in the forum state.

"[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence in a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." [*Id.* at 188, quoting *Burger King* at 476.]

[8] See affidavit of Mark Blask.

[9] The contacts that we rely on in arriving at our decision are the telephone calls and the periodic shipment of goods into Michigan over several months. We do not rely on the visit by the P. D. George representative who met with representatives of Excelda in an effort to settle the dispute over the defective goods. Nor do we rely on the collection suit that P. D. George initiated against Excelda in a Michigan court.

[10] This conclusion is consistent with *McGee v Int'l Life Ins Co*, 355 US 220; 78 S Ct 199; 2 L Ed 2d 223 (1957). In that case, the Supreme Court held that the Due Process Clause was satisfied because the suit was based on a contract that had substantial connection with the plaintiff's home state. To support this conclusion, the Court only relied on the facts that the reinsurance contract issued by the nonresident defendant was deliv-

In arriving at this decision, we do not rely on a stream of commerce theory. This case is distinguishable from facts such as those in *Asahi Metal Industry Co, Ltd v Superior Court of California*, 480 US 102; 107 S Ct 1026; 94 L Ed 2d 92 (1987). In this case, P. D. George did not merely place its product into the stream of commerce, not having further knowledge regarding where that product might end up. Rather, P. D. George purposefully directed its product to a Michigan corporation, which is qualitatively different than the mere act of placing its product into the stream of commerce.

Next, we must consider the second prong and determine whether the cause of action arose from the defendant's activities in the state, which is necessary for a Michigan court's assertion of specific jurisdiction (or limited jurisdiction). This prong is readily established because the action was for breach of contract that arose from the defendant's contact with this state, i.e., the shipping of defective goods into Michigan.

Finally, we must consider the third prong and determine whether the defendant's activities were substantially connected with Michigan to make the

---

ered in the plaintiff's home state, the premiums were mailed from that state, and the plaintiff's decedent was a resident of that state when he died.

There are similar and also more compelling facts in this case to support a finding of Michigan jurisdiction. Although P. D. George did not solicit business in Michigan, it certainly chose to do business in Michigan. P. D. George chose to send its product into this state; it could have declined to do so if it did not wish to be subjected to Michigan jurisdiction. Just as California has an interest in providing effective means of redress for its residents when their insurers refuse to pay claims, so does Michigan have an interest in providing the same to its resident businesses when their suppliers provide them with defective goods.

exercise of jurisdiction over the defendant reasonable, i.e., whether Michigan's exercise of jurisdiction comports with traditional notions of fair play and substantial justice. "[W]here a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King* at 477. As noted in *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 292; 100 S Ct 559; 62 L Ed 2d 490 (1980), the burden on the defendant is a primary concern, but, in appropriate cases, it should be considered in light of other relevant factors, including

> the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies . . . . [Citations omitted.]

Considering these "other factors," we do not believe that P. D. George presents a compelling case that subjecting it to Michigan jurisdiction would be unreasonable or unfair. Although litigating in Michigan courts may not be convenient for P. D. George, we do not believe that this burden rises to a constitutional level.

Other factors as a whole weigh in favor of Michigan jurisdiction. First, Michigan has strong interests in adjudicating the dispute and in assuring that a corporation that ships defective products into Michigan

cannot escape the jurisdiction of the forum where those products were discovered to be defective.

Second, Starbrite and Excelda have an interest in obtaining convenient and effective relief in this forum. Although the plaintiff may be able to obtain effective relief in either Delaware or Missouri, the most convenient forum is Michigan. Because the defective product was mixed and packaged in Michigan, it is likely that many of the witnesses and evidence may also be located in Michigan.

Third, the most efficient resolution of this controversy would occur in Michigan where both defendants, Excelda and P. D. George, would be subject to jurisdiction. Thus, there would only need to be one trial. If we found that jurisdiction was not proper in Michigan with regard to P. D. George, then there would have to be another parallel suit in Missouri. Two vastly similar trials, based on the same evidence, would not be an efficient resolution of this controversy.

Finally, Michigan jurisdiction in this case would advance the shared interest of the several states in furthering fundamental substantive social policies.

### IV. CONCLUSION

In conclusion, we have determined that F.O.B. shipping terms are not dispositive of whether the defendant entered into a contract for materials to be furnished in Michigan. The statutory language "furnishing" is broader than "delivery," and, in this case, P. D. George entered into a contract for materials to be furnished in Michigan. Also, we are convinced that P. D. George had sufficient contacts with Michigan to per-

mit exercise of limited personal jurisdiction over the defendant.

We reverse the decision of the Court of Appeals and remand this case to the circuit court for trial.

MALLETT, C.J., and BRICKLEY and BOYLE, JJ., concurred with CAVANAGH, J.

WEAVER, J. (*concurring in part and dissenting in part*). While I concur with part II of the majority's opinion, I write separately to dissent from part III because I disagree with the majority's conclusion that defendant had sufficient minimum contacts with Michigan to support an assertion of limited personal jurisdiction. Instead, in this case, I would affirm the decision of the Court of Appeals, which held that an exercise of limited personal jurisdiction in this instance would constitute a violation of the Due Process Clause.

The majority correctly finds that the initial step in this personal jurisdiction inquiry is satisfied, and that P. D. George's conduct falls within the purview of § 5 of Michigan's long-arm statute. MCL 600.715(5); MSA 27A.715(5). However, the personal jurisdiction analysis does not end at this initial stage because this Court must also determine whether sufficient minimum contacts exist under *International Shoe Co v Washington*, 326 US 310; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945), and its progeny to sustain the imposition of personal jurisdiction. It is with regard to this second inquiry that the majority and I disagree. I would hold that the facts of this case do not support a finding of sufficient minimum contacts to assert personal jurisdiction over defendant.

In determining whether sufficient minimum contacts exist, the touchstone of constitutionality is whether P. D. George purposely availed itself of the privilege of conducting activities or business in Michigan to an extent that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.[1] This Court has found that

> [t]his "purposeful availment" requirement insures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . or as the result of the "unilateral activity of another party or a third person," *Helicopteros Nacionales De Columbia, SA v Hall*, 466 US 408, 417; 104 S Ct 1868; 80 L Ed 2d 404 (1984).

Contrary to the majority's conclusion, the evidence does not establish that P. D. George "purposely availed" itself of the benefits of Michigan law. P. D. George's contacts with this state were, rather, minimal and incidental and were, therefore, insufficient to satisfy the requirements of the Due Process Clause for exercising personal jurisdiction over a foreign corporation. See *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 295; 100 S Ct 559; 62 L Ed 2d 490 (1980).

The facts reveal that P. D. George neither maintained offices in Michigan nor sent its agents into the state.[2] Moreover, P. D. George neither solicited nor

---

[1] *Witbeck v Bill Cody's Ranch Inn*, 428 Mich 659, 666; 411 NW2d 439 (1987), citing *Burger King Corp v Rudzewicz*, 471 US 462, 474; 105 S Ct 2174; 85 L Ed 2d 528 (1985). See also *Gooley v Jefferson Beach Marina, Inc*, 177 Mich App 26, 30; 441 NW2d 21 (1989).

[2] P. D. George did send agents into the state after problems arose that forced P. D. George to litigate a collection action against Excelda. P. D. George had to litigate the matter in Michigan because it had to choose a

chose to do business in Michigan.[3] Rather, P. D.

---

forum with personal jurisdiction over Excelda. However, litigation of that collection action should not be used, and is not being used by the majority, to exercise personal jurisdiction over P. D. George in this action. I would, therefore, agree with the following assertion of the Court of Appeals in this case:

> The policy of encouraging remediation would be thwarted if P. D. George were punished for having made a visit to Michigan or telephone calls to resolve a problem. [211 Mich App 475, 484; 536 NW2d 558 (1995).]

[3] The fact that P. D. George neither solicited nor chose to do business in Michigan distinguishes the instant case from *McGee v Int'l Life Ins Co*, 355 US 220; 78 S Ct 199; 2 L Ed 2d 223 (1957), a case relied upon by the majority. See *ante*, p 311, n 10. In *McGee*, the Court held that the Due Process Clause did not preclude the California court from entering a binding judgment against the Texas-based insurance company, even where the insurance company had never solicited or done any business in California other than assuming the insurance contract at issue in that case. The Court based its decision on the fact that the insurance company agreed to assume a life insurance contract with a California resident and delivered the reinsurance contract to California. Moreover, the California resident mailed insurance premiums from that state for over two years until his death, at which time he was still a resident of that state.

In this case, P. D. George had very limited contact with Excelda and did not specifically contract with the Michigan corporation. Rather, P. D. George contracted with a Florida corporation, which would use its product in a compound to be marketed and sold in Florida. The subject matter of the contract was not, therefore, intentionally and exclusively located in Michigan, as it was in *McGee*.

Furthermore, in *McGee*, the Court considered a specific California statute that subjected foreign corporations to suit in California on insurance contracts with residents of that state, Cal Ins Code, §§ 1610-1620, and reasoned:

> It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. . . . When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. [*Id.* at 223.]

Similar policy concerns have not been specifically addressed by Michigan's Legislature, however. Moreover, in this case, many crucial witnesses

George had no choice over who would dilute the primary mix that it supplied. The original agreement between P. D. George and Pollack provided that P. D. George would send the teak oil directly to Starbrite in Florida. Pollack unilaterally changed that provision in the original agreement, chose Excelda Manufacturing Corporation as final processor, and subsequently required P. D. George to send its teak oil to Excelda, which is located in Michigan. However, despite Pollack's directive that P. D. George send its product to Excelda, I would agree with the decision of the Court of Appeals that P. D. George did not purposefully direct its goods toward Michigan. Rather, the facts establish that P. D. George shipped its product "F.O.B. St. Louis,"[4] which means that P. D. George only agreed to supply Excelda with its product in Missouri, not Michigan. Finally, P. D. George's shipping invoices stated that Missouri law was to govern any potential disputes between P. D. George and Excelda.[5]

---

will be found in Missouri, not Michigan, because the complaint alleges that P. D. George's teak oil, which was made in St. Louis, was defective.

I would, therefore, find that *McGee* is distinguishable and disagree with the majority's assertion that even more compelling facts exist in this case than in *McGee*.

[4] F.O.B. is a delivery term under the Uniform Commercial Code, which is codified at MCL 440.2319; MSA 19.2319. This term indicates that, at the point of shipment and once the goods are in the possession of the carrier, title and risk of loss shifts to the purchaser. In this case, once the primary mix that P. D. George prepared was delivered to the carrier, P. D. George had no further interest in, or control over, the product, which was to eventually be distributed in Florida, not Michigan.

[5] The United States Supreme Court has held that choice of law provisions, while insufficient to confer jurisdiction standing alone, are relevant in determining whether a party "has 'purposely invoked the benefits and protections of a State's laws' for jurisdictional purposes." *Burger King Corp v Rudzewicz*, n 1 *supra* at 482.

For these reasons, I respectfully dissent with respect to part III of the majority's analysis and would find that P. D. George did not purposely avail itself of the benefits of Michigan law. Therefore, I would find that P. D. George had insufficient minimum contacts with Michigan to sustain Michigan's assertion of personal jurisdiction over P. D. George.[6] Accordingly, I would affirm the Court of Appeals minimum-contacts analysis and conclusion that, on the basis of lack of personal jurisdiction, the trial court's denial of P. D. George's motion for summary disposition must be reversed.

RILEY, J., concurred with WEAVER, J.

KELLY, J., took no part in the decision of this case.

---

[6] Because I would find that P. D. George did not purposely avail itself of the benefits of Michigan law, I would find it unnecessary to address the remaining two prongs of the minimum-contacts test employed by the majority. *Ante*, p 309, *Jeffrey v Rapid American Corp*, 448 Mich 178, 186; 529 NW2d 644 (1995), quoting *Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).