# STATE OF MICHIGAN

# COURT OF APPEALS

FIVE BROTHERS MORTGAGE COMPANY
SERVICES & SECURING, INC.,

UNPUBLISHED
January 10, 2017

Plaintiff-Appellee,

v

No. 329888
Macomb Circuit Court
LC No. 2015-000340-CB

THE MCCUE MORTGAGE COMPANY,

Defendant-Appellant.

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(1) (lack of personal jurisdiction). We reverse and remand for entry of an order granting defendant's motion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is a Michigan corporation with its registered office located in Macomb County. Defendant is a Connecticut corporation that has no offices, employees, or agents in Michigan. In its complaint, plaintiff asserted that "upon information and belief," defendant "originates and/or services loans in Macomb County, Michigan" and that the parties entered into a contract on April 14, 2011, for plaintiff to "provide property preservation field services and inspections" for properties that defendant was servicing or for which it was acting as a mortgagee. Plaintiff alleged that it fully performed its duties under the contract, but that defendant had not paid plaintiff $230,493.84 owed for services rendered, despite requests for payment. Plaintiff also alleged that it had loaned defendant $75,177.04 to cover the principal balance owed on a HUD property, for which defendant had not reimbursed plaintiff. Plaintiff alleged two breach of

---

[1] *Five Brothers Mortgage Co v The McCue Mortgage Co*, unpublished order of the Court of Appeals, entered December 18, 2015 (Docket No. 329888, Event No. 21. This Court's order also granted the motions for immediate consideration, to waive the transcript production requirement of MCR 7.209, and to stay further proceedings pending resolution of the appeal or further order of this Court.

contract claims, one for an account stated and one for money advanced, and requested money judgments for the amounts owed, plus interests, costs, and attorney fees.

In its first responsive pleading, defendant moved for summary disposition pursuant to MCR 2.116(C)(1) (lack of personal jurisdiction), arguing that it was not subject to the personal jurisdiction of the trial court. Defendant argued that it did not conduct business in the state of Michigan and had not consented to jurisdiction in Michigan. Further, the negotiations for the contract in question occurred in Texas and Connecticut, and defendant executed the contract in Connecticut. Defendant further stated that it had no contacts with Michigan and denied that it had ever originated or serviced any loans, or conducted any business, in the state. Defendant contended that all of the properties for which plaintiff provided services to defendant, and which could possibly be the basis for any dispute between plaintiff and defendant, were located in the state of Connecticut. Defendant argued that there was no basis to establish long-arm jurisdiction under Michigan's long-arm statute, MCL 600.715, and that exercising personal jurisdiction against it would violate the Due Process Clause of the Fourteenth Amendment because defendant's only contacts with Michigan were phone calls, letters, or emails with plaintiff that were insufficient to establish the necessary minimum contacts with the state.

In support of its motion, defendant submitted the affidavit of Katherine McCue Scierka, defendant's executive vice president, who attested that she first came into contact with plaintiff at a Mortgage Bankers Association conference in Dallas, Texas, in February 2011. According to Scierka, plaintiff was a vendor at the conference and was giving away an iPad through a raffle, and she was selected as the winner of the giveaway. Consequently, plaintiff's president, Joe Badalamenti, flew to Connecticut to deliver the iPad to Scierka at her office. Scierka agreed to a sales meeting regarding plaintiff's services wherein plaintiff stated that it was a Federal Housing Administration (FHA) compliant vendor in Connecticut, and defendant shortly thereafter hired plaintiff to do property preservation work on properties. Scierka's affidavit also stated that defendant only originated and serviced loans in Connecticut.

In its response to defendant's motion, plaintiff replied that it was based in Michigan, but provided inspection, preservation, and maintenance services for property throughout the United States on which the mortgagor was delinquent or had defaulted. Plaintiff subcontracted all of the work to independent contractors in the vicinity of the property and did not actually perform any of the work itself. Plaintiff argued that it entered into a "Contract for Field Services and Inspections" with defendant in April 2011. Although the contract was for one year, the parties continued working under the agreement until May 2014 when defendant sent a letter to plaintiff terminating the contract. Plaintiff maintained that, although it had provided services on numerous properties for defendant, defendant failed to pay all that was owed under the contract. In addition, plaintiff asserted that, at defendant's request, it had loaned defendant additional funds in July 2013 that had not been repaid. Plaintiff indicated that the loan was paid from its bank account in Michigan, and that defendant had made payments to plaintiff in Michigan.

Plaintiff argued that the trial court could exercise limited personal jurisdiction over defendant because of its "transaction of any business within the state" under MCL 600.715(1). According to plaintiff, the parties' agreement was negotiated and executed through emails sent back and forth between Michigan and Connecticut, and their contract called for plaintiff, a Michigan company, to provide services to defendant on an ongoing basis, and for defendant to

pay plaintiff in Michigan for those services. Plaintiff maintained that defendant contacted plaintiff numerous times in Michigan, either through email or an Internet portal maintained by plaintiff, regarding which properties were to be serviced, and that defendant sent to plaintiff, in Michigan, monthly spreadsheets regarding the work.

With its response plaintiff submitted a copy of the contract between the parties, the May 14, 2014 letter from defendant to plaintiff terminating the contract, an affidavit of account by plaintiff's accounting department employee, Jeff Sandora, indicating the amounts owed to plaintiff by defendant under the contract and the remaining balance on the loan, accounts receivable reports, and documentation regarding the loan from plaintiff to defendant.

In its reply brief, defendant argued that what plaintiff characterized as a "loan" was covered by the parties' contract, and thus was not a separate transaction. Further, in issuing a check to defendant (for what plaintiff characterizes as a loan), plaintiff made reference to "reimbursement" and was actually fulfilling its indemnification obligation under the party's contract. Defendant further argued that the mere issuance of a check by a Michigan corporation does not suffice for a Michigan court to take jurisdiction over the recipient of that check. According to defendant, the Sandora affidavit addressed only financial and accounting issues and made no allegations that affected the personal jurisdiction analysis. By contrast, Scierka's affidavit was evidence of defendant's non-availment of the Michigan market and had not been refuted by plaintiff. Defendant further maintained that plaintiff's allegations concerning the contract's negotiation and execution were not supported by any documentary evidence, such as copies of the alleged emails, and thus did not refute Scierka's testimony that the contract was negotiated in Texas and Connecticut and executed in Connecticut. Furthermore, the parties' contract, which was a standard form contract drafted by plaintiff, did not contain a forum clause.

Following oral arguments,[2] the trial court entered an opinion and order denying defendant's motion for summary disposition. The trial court noted this Court's decision in *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 430; 633 NW2d 408 (2001), holding that even the "slightest transaction" of business is enough to find that the state court has limited personal jurisdiction over a nonresident corporation under MCL 600.715(1) and that "the only real limitation placed on this long arm statute is the due process clause." Without further analysis, the trial court proceeded to address whether due process would be offended by the court's assertion of personal jurisdiction over defendant. Citing *Salom Enterprises, LLC v TS Trim Indus, Inc*, 464 F Supp 2d 676 (ED Mich, 2006), the court noted that, "as in *Salom*," defendant negotiated with plaintiff, knowing that plaintiff was based in Michigan, as evidenced by plaintiff's address appearing in the first paragraph of the contract, and made payments to plaintiff in Michigan. The court found that these actions were sufficient contacts to establish that defendant "purposely availed itself of the privilege of conducting activities in Michigan." The

---

[2] During oral arguments, defendant's attorney revealed that defendant had sued plaintiff for claims arising from the same contract in federal district court in Connecticut based on diversity. In that suit, plaintiff apparently filed a counterclaim raising the identical claims alleged in the instant case.

court further found that plaintiff's claims arose "from [d]efendant's alleged failure to comply with the terms of the contract it formed with a Michigan corporation, and pursuant to which it performed for a prolonged period of time." Finally, the court determined that the burden imposed on defendant as a result of being forced to litigate in Michigan was "reasonable" and that Michigan "has an interest in adjudicating the claims of the entities organized under its laws." Thus, the court found that exercising jurisdiction over defendant in this action was reasonable and satisfied due process. Defendant's motion for reconsideration was denied, and this appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). When reviewing a decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and appellate courts consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party. MCR 2.116(G)(5); *Yoost v Caspari*, 295 Mich App 209, 221; 813 NW2d 783 (2012). In defending against a motion for summary disposition under MCR 2.116(C)(1), " '[t]he plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition.' " *Id.*, quoting *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995). "The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence submitted by the parties." *Yoost*, 295 Mich App at 221. "[W]hen allegations in the pleadings are contradicted by documentary evidence, the plaintiff may not rest on mere allegations but must produce admissible evidence of his or her prima facie case establishing jurisdiction." *Id.*, citing MCR2.116(G)(6). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Yoost*, 295 Mich App at 222 (quotation and citations omitted).

This Court's review of jurisdictional issues is also de novo. *In re Dorsey*, 306 Mich App 571, 580; 858 NW2d 84 (2014), lv app held in abeyance ___ Mich ___; 872 NW2d 489 (2015). Whether a court possesses personal jurisdiction over a party is a legal question, which is also reviewed de novo. *Yoost*, 295 Mich App at 219. Likewise, whether the exercise of personal jurisdiction over a nonresident is consistent with notions of fair play and substantial justice as required by the Due Process Clause of the Fourteenth Amendment is subject to de novo review. *Id.* To the extent the resolution of this appeal involves the interpretation of a statute, this Court's review is also de novo. *Glenn v TPI Petroleum, Inc (After Remand)*, 305 Mich App 698, 702; 854 NW2d 509 (2014).

## III. ANALYSIS

### A. MICHIGAN'S LONG ARM STATUTE

Courts may have general or limited personal jurisdiction over a corporate defendant, depending on the nature of the relationship between the corporation or its agent and the forum state. "The exercise of general jurisdiction is possible when a defendant's contacts with the forum state are of such nature and quality as to enable a court to adjudicate an action against the

defendant, even when the claim at issue does not arise out of the contacts with the forum state." *Electrolines, Inc v Prudential Assurance Co, Ltd*, 260 Mich App 144, 166; 677 NW2d 874 (2003). MCL 600.711 describes three relationships that "constitute a sufficient basis of jurisdiction" such that courts of record can "exercise general personal jurisdiction over the corporation" and are enabled to "render personal judgments against the corporation." Those relationships are: (1) incorporation under the laws of the state; (2) consent; and (3) the "carrying on of a continuous and systematic part of its general business within the state." It is undisputed that none of these subsections describe defendant's relationship with Michigan. Therefore, the trial court could not exercise general personal jurisdiction over defendant.

"When a defendant's contacts with the forum state are insufficient to confer general jurisdiction, jurisdiction may be based on the defendant's specific acts or contacts with the forum state." *Electrolines*, 260 Mich App at 166. A state court may exercise limited personal jurisdiction over an out-of-state corporation if two requirements are established. *Jeffrey*, 448 Mich at 186. First, the corporate defendant must come within the described relationships in the state's long-arm statute, MCL 600.715. *Id*. at 185. "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction." *Yoost*, 295 Mich App at 222 (quotation and citation omitted). Next, the court must determine that the exercise of limited personal jurisdiction over the defendant does not violate the Due Process Clause of the Fourteenth Amendment. *Starbrite Distrib, Inc v Excelda Mfg Co*, 454 Mich 302, 304; 562 NW2d 640 (1997). The due process analysis "restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Yoost*, 295 Mich App at 322-323 (quotation and citation omitted). "Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident." *Id*. at 322.

The trial court found that it had limited personal jurisdiction under MCL 600.715(1), which provides in relevant part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

In *Oberlies*, 246 Mich App at 430, this Court noted that the phrase "transaction of any business" is not defined in the long-arm statute, and it is therefore proper to rely on dictionary definitions to determine its meaning. The *Oberlies* Court further stated:

> "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit." *Id*. Our Legislature's use of the word "any" to define the amount of business that must be transacted establishes

that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction. . . . The only real limitation placed on this [long arm] statute is the due process clause. [Quotations and citation omitted.]

Defendant argues that plaintiff did not come forward with any admissible evidence to refute the Scierka affidavit, and thus did not establish a prima facie case for the exercise of personal jurisdiction. The trial court did not address the quantum of evidence sufficient to establish a prima facie case under the statute, noting instead that this Court had stated in *Oberlies* that "the only real limitation placed on this long arm statute is the due process clause." Thus, without addressing the evidence in this case with regard to whether it was sufficient to establish limited jurisdiction under MCL 600.715(1), the court proceeded to consider whether the evidence was sufficient to withstand the due process analysis. Defendant argues this was erroneous and that plaintiff's failure to come forward with any documentary evidence to support its jurisdictional allegation that defendant originated or serviced mortgage loans in Michigan, and to defeat the Scierka affidavit's attestation that defendant did not transact business in Michigan, should have resulted in the trial court's granting of its motion. See *Glenn*, 305 Mich App at 704-705 ("[The defendant] came forward with documentary evidence to dispute plaintiffs' allegations, but the trial court incorrectly continued to construe the allegations in plaintiffs' pleadings as true.")

However, defendant's argument ignores the second jurisdictional allegation made by plaintiff, i.e. that the parties entered into a contract on April 14, 2011, for plaintiff to provide field services and inspections to defendant on properties it serviced. Plaintiff alleged that it had performed under the contract, but that defendant had failed to make all of the payments that were due. Plaintiff further alleged the existence of a loan from plaintiff to defendant that had not been repaid. Attached to the complaint was a copy of the contract, which contained in the first paragraph plaintiff's address in Warren, Michigan, and an affidavit from its employee, Sandora, that plaintiff was owed the sums alleged in the complaint. In its motion for summary disposition, defendant did not deny the existence of this contract or the money owed, and it therefore constituted unrefuted evidence of the transaction of some business between the parties. Defendant also acknowledged that, pursuant to the performance of the contract, it had communications with plaintiff that included telephone calls, letters, or emails directed to Michigan. In its response to defendant's motion, plaintiff noted that the original one-year contract had continued through ongoing performance for approximately three years. During that time, the parties had entered into an additional transaction, characterized by plaintiff as a loan and by defendant as performance under the original contract, that involved plaintiff sending a check, drawn on its Michigan bank account, and emails from Michigan to defendant in Connecticut. Plaintiff expected payment on the original contract and on the loan to be made to it in Michigan.

Although it is a close question whether the evidence was sufficient to satisfy the statutory standard of "[t]he transaction of any business within the state," this Court has said that "the only real limitation placed on this long arm statute is the due process clause." *Oberlies*, 248 Mich App at 430. In *Aaronson v Lindsay & Hauer Int'l, Ltd*, 235 Mich App 259, 263; 597 NW2d 227 (1999), this Court considered the exercise of limited personal jurisdiction under MCL 600.715(1), and noted:

In *Sifers v Horen*, 385 Mich 195; 188 NW2d 623 (1971), the Michigan Supreme Court observed that as used in subsection 1 of the long-arm statute, the term "'any' means just what it says. It includes 'each' and 'every' [business transaction]." *Id*. at 199, n 2. "Thus," this Court has noted, "the Supreme Court interpreted [the long-arm statute] to its full potential." *Kiefer v May*, 46 Mich App 566, 571; 208 NW2d 539 (1973).

"[T]he breadth of the reach afforded by the long-arm statute is extended 'to the farthest limits permitted by due process,' *Sifers*, 385 Mich at 199." *Aaronson*, 235 Mich App at 263, n 1. Therefore, we conclude that defendant's performance under the contract, and its communication with and submission of payments to plaintiff in Michigan, is sufficient to satisfy MCL 600.715(1). We thus proceed to the second step of the analysis

## B. DUE PROCESS

Concerning due process, an out-of-state defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" in order to subject the defendant to personal jurisdiction. *Int'l Shoe Co v Washington*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945) (citation and quotation marks omitted). In *Jeffrey*, 448 Mich at 185-186, this Court observed:

The requirement of minimum contacts serves two purposes: (1) it protects a defendant from litigating in distant or inconvenient forums, and (2) it ensures that a state does not extend its judicial power beyond the limits imposed on all states by our federal system of government. Of the two, however, the overriding purpose of due process is to protect the individual liberty interests encompassed within its scope as opposed to furthering concepts of federalism. Nevertheless, both purposes work in tandem to give our legal system a degree of predictability that provides potential defendants with the opportunity to structure their affairs so as to provide some assurance regarding where they may be haled into court. [Citations omitted.]

"Because personal jurisdiction primarily depends on 'reasonableness' and 'fairness,' each case must turn on its own merits." *W H Froh, Inc v Domanski*, 252 Mich App 220, 228; 651 NW2d 470 (2002), quoting *Jeffrey*, 448 Mich at 186. "When undertaking a due process analysis case by case, a court should examine the defendant's own conduct and connection with the forum to determine whether the defendant should reasonably anticipate being haled into court there." *Id*. at 230.

This Court has established a three-part test to be used in determining if the exercise of limited personal jurisdiction comports with the Due Process Clause.

First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially

connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).]

The first prong of the due process analysis entails the defendant "reaching beyond his own state" and "purposefully availing himself of the privilege of exploiting the other state's business opportunities." *W H Froh*, 252 Mich App at 231. The United States Supreme Court has stated that "purposeful availment" may be found if the defendant's contacts with a jurisdiction "proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." *Burger King Corp v Rudzewicz*, 471 US 462, 475; 105 S Ct 2174; 85 L Ed 2d 528 (1985) (emphasis in original; quotation and citation omitted). Stated another way, "[p]urposeful availment means something akin to either a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct that properly can be regarded as a prime generating cause of resulting effects in Michigan." *W H Froh*, 252 Mich App at 231 (quotation and citation omitted). "Something more than a passive availment of Michigan opportunities must exist that gives the defendant reason to foresee being haled before a Michigan court." *Id*. However, the defendant "need not have been physically present in a state for limited personal jurisdiction to exist in that state." *Id*.

In this case, defendant did not reach out to Michigan for the possibility of doing business there. Scierka stated in an unrefuted affidavit that she first came into contact with plaintiff at a Mortgage Bankers Association conference in Dallas, Texas, in 2011. According to Scierka, plaintiff was a vendor at the conference and was raffling away an iPad, and she was selected as the winner of the giveaway. Thereafter, plaintiff's president flew to Scierka's office in Connecticut to deliver the iPad and to conduct a sales meeting that resulted in defendant hiring plaintiff. Thereafter, the parties communicated by mail, email, and telephone, and through an online portal, and plaintiff performed work (or had others perform work for it) in Connecticut that defendant had assigned to plaintiff. From the record, it is clear that plaintiff's representative went to the business conference in Texas and held the IPad raffle in order to establish new contacts in other states. Plaintiff's president went to Connecticut to personally deliver the prize and pitch plaintiff's services to defendant. Therefore, it cannot be said that defendant reached out to Michigan to take advantage of business opportunities here. Rather, it was *plaintiff* that reached out to Connecticut to take advantage of business opportunities there.

Defendant further argues that the primary authority on which the trial court relied to find purposeful availment is non-binding and factually distinguishable. We agree. In its due process analysis, the trial court relied extensively on *Salom Enterprises, LLC v TS Trim Indus, Inc*, 464 F Supp 2d 676 (ED Mich, 2006). In that case, the plaintiff was a Texas limited liability company that conducted most of its operations in Texas and Mexico, was in the process of winding up its affairs, had begun to conduct business in Michigan, and had registered in Michigan when the lawsuit started. The defendant was an Ohio corporation that was not registered in Michigan but had conducted business with a Michigan company in the past. The case was brought in federal district court in Michigan based on diversity jurisdiction, and the defendant moved to dismiss based in part on lack of personal jurisdiction. The district court found that the defendant's business activities in Michigan—which appeared limited to guaranteeing the plaintiff's account with a leather supplier, wiring payments to the plaintiff's bank account in Michigan, and calling the plaintiff's representatives in Michigan to negotiate an inventory purchase agreement— satisfied MCL 600.715(1). *Id*. at 683-684. Further, the district court held that the three prongs

of the due process analysis were met by evidence that the defendant negotiated and contracted with a plaintiff corporation that it knew was in Michigan, and that it knew it would be required to pay money to the plaintiff in Michigan. *Id*. at 684-685. The district court also found that Michigan had a particular interest in the litigation because the plaintiff was winding up its affairs in the state. *Id*. at 687.

In making the due process analysis in the present case, the trial court stated that, "as in *Salom*," defendant negotiated with plaintiff, knowing that plaintiff was headquartered in Michigan because plaintiff's address appeared in bold in the first paragraph of their agreement. Further, defendant knew that it would be obligated to send payments to plaintiff in Michigan and had made numerous payments to plaintiff. The trial court stated that these contacts were sufficient to establish that defendant "purposefully availed itself of the privilege of conducting activities in Michigan."

*Salom* is factually distinguishable.[3] Unlike the present case, the defendant in *Salom* sought out the plaintiff to work on a project, and the defendant had also guaranteed that the plaintiff would purchase materials from another Michigan company. *Id*. at 685, 689. The defendant in *Salom* thus, by its active conduct, and unlike defendant here, sought the privilege of doing business in Michigan. Because the trial court relied on *Salom*, it placed too much emphasis on defendant having negotiated an agreement and having placed orders with plaintiff knowing that plaintiff was located in Michigan, and in finding purposeful availment based on these facts alone. Given our conclusion that plaintiff pursued a business opportunity with defendant in Texas and Connecticut, rather than defendant pursuing opportunities in Michigan, the trial court's reliance was misplaced.

The second factor in the due process analysis is whether the cause of action arose from the defendant's business activities in the state. *Oberlies*, 246 Mich App at 434. Plaintiff's cause of action arose from defendant's alleged failure to pay monies owed to plaintiff. Defendant's failure to pay occurred in Connecticut, where defendant is located and conducts all of its business, rather than Michigan, where plaintiff was awaiting payment. "When undertaking a due process analysis case by case, a court should examine *the defendant's own conduct* and connection with the forum to determine whether the defendant should reasonably anticipate being haled into court there." *W H Froh*, 252 Mich App at 230 (emphasis added). Again, this case is distinguishable from Salom, where the district court found that the cause of action for nonpayment was "made possible by the resulting agreement" that had arisen out of defendant's purposeful availment of the privilege of conducting business in Michigan, and was tied in with the overall issue of the winding-up of a Michigan corporation and the payment of Michigan creditors. *Salom*, 464 F Supp 2d at 687. Therefore, this factor also was not met.

The third due process factor is whether the defendant's business activities were "substantially connected with Michigan to make the exercise of jurisdiction over the defendant

---

[3] *Salom*, as the decision of a lower federal court, is not binding on this Court, although it may be persuasive. See *Abela v Gen Motors Corp*, 469 Mich 603; 677 NW2d 325 (2004).

reasonable." *W H Froh*, 252 Mich App at 228 (quotation omitted). When considering whether jurisdiction is reasonable, it is the burden on the defendant that is primary. *W H Froh*, 252 Mich App at 232. As a Connecticut corporation with no operations in Michigan, the burden on defendant of litigating in Michigan is great. The court may also consider "the forum State's interest in adjudicating the dispute" and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Id*. at 232-233 (quotation omitted). None of defendant's alleged actions were substantially connected with the state of Michigan so as to make the exercise of jurisdiction there reasonable. Although plaintiff argues that the contract was formed and executed in Michigan, and the agreement is a boilerplate contract prepared by plaintiff, and the parties apparently each signed the contract in their home states and emailed their signatures to each other. The contract is silent on choice of law or forum. As the drafter, plaintiff could certainly have attempted to control those choices in the agreement, but it did not do so. Nothing in the record indicates that Michigan is overall a more convenient forum for the parties than Connecticut would be. Further, Michigan lacks the interest cited in *Salom*, 464 F Supp 2d at 687, regarding entities winding up their affairs and paying Michigan creditors.[4] We conclude that this factor was also not met.

## IV. CONCLUSION

The trial court erred by denying defendant's motion for summary disposition based on lack of personal jurisdiction. We therefore reverse the trial court's order and remand for entry of an order granting defendant's motion for summary disposition under MCR 2.116(C)(1).

Reversed and remanded. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[4] Were we to find the exercise of personal jurisdiction appropriate simply because Michigan "has an interest in adjudicating the claims of the entities organized under its laws," we would effectively replace the existing due process analysis with a sanctioning of jurisdiction whenever a Michigan plaintiff brings suit in Michigan.