AARONSON v LINDSAY & HAUER INTERNATIONAL LTD

Docket No. 203776. Submitted October 6, 1998, at Detroit. Decided April 16, 1999, at 9:00 A.M.

Susan Aaronson, the widow of Gilbert Aaronson, brought an action in the Oakland Circuit Court against Lindsay & Hauer International Ltd., a Canadian corporation with offices in Canada and New York, seeking the rescission of sales of gemstones shipped to Gilbert in Michigan from Canada. The defendant did not maintain an office in Michigan, and no employee, salesperson, agent, officer, or shareholder of the defendant visited Michigan for the purpose of conducting business with Gilbert. Gilbert and the defendant had used the mail and telephone to communicate. The plaintiff alleged violations of the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.*, the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*, and common-law fraud. The court, Fred M. Mester, J., granted summary disposition in favor of the defendant on the bases that the court's exercise of limited personal jurisdiction over the defendant violated due process and that the MUSA is inapplicable because the gemstones were not commodities and the parties never entered into a commodities contract. The plaintiff appealed.

The Court of Appeals *held*:

1. The acts engaged in by the defendant are sufficient for the state to invoke its authority to exercise limited personal jurisdiction under MCL 600.715(1),(2); MSA 27A.715(1),(2). The communications that took place and the shipment of the gemstones into Michigan satisfy the requirements of the long-arm statute.

2. The exercise of limited personal jurisdiction over the defendant is consistent with the requirements of due process. The defendant availed itself of the opportunity to do business in Michigan, the cause of action arose from the defendant's contacts with the state, and the state's exercise of limited personal jurisdiction over the defendant is reasonable. The court erred in finding to the contrary.

3. The gemstones fall within the statutory definition of a commodity established in the MUSA, MCL 451.801(n); MSA 19.776(401)(n). The transactions are properly classified as commodity contracts under the MUSA, MCL 451.801(o)(2); MSA

19.776(401)(o)(2). The court erred in summarily dismissing the count alleging violation of the MUSA.

Reversed and remanded.

1. COURTS — LONG-ARM JURISDICTION.

The two-step analysis for determining if the state may exercise limited personal jurisdiction over a defendant requires consideration of whether jurisdiction is authorized by MCL 600.715; MSA 27A.715 and whether the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment (US Const, Am XIV).

2. COURTS — LONG-ARM JURISDICTION — DUE PROCESS.

Due process requires only that in order to subject a defendant that is not present within the state to a judgment in personam, the defendant have certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice; minimum contacts exist where the defendant purposefully avails itself of the privilege of conducting activities in the state, thus invoking the benefits and protections of the state's laws, the cause of action arises from the defendant's activities in the state, and the defendant's activities are so substantially connected with the state as to make the exercise of jurisdiction over the defendant reasonable; the purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third party.

3. COURTS — LONG-ARM JURISDICTION — DUE PROCESS.

The minimum contacts purposefully established by a defendant with a forum state may be considered in light of other factors to determine whether the assertion of personal jurisdiction over the defendant would comport with fair play and substantial justice; the factors that may be considered include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

*Marc A. Goldman & Associates, P.C.* (by *Marc A. Goldman*), for the plaintiff.

*Weisman, Trogan, Young & Schloss, P.C.* (by *Martin C. Weisman*), for the defendant.

Before: KELLY, P.J., and HOLBROOK, JR., and MURPHY, JJ.

HOLBROOK, JR., J. Plaintiff appeals as of right from two trial court orders granting summary disposition to defendant. We reverse and remand.

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant is a Canadian corporation, with offices located in Toronto, Ontario, and New York City, New York. Plaintiff is the widow of Gilbert Aaronson (hereafter Aaronson). In April 1991, Aaronson, who was a Michigan resident, contacted defendant's Arizona agent and requested that defendant's sales literature be mailed to him. Shortly thereafter, Aaronson initiated direct contact with defendant by telephoning defendant's Toronto office. Subsequent communications between Aaronson and defendant were initiated by both parties. Additional sales literature was also mailed to Aaronson from defendant's Toronto office.

From June 1991 to October 1992, Aaronson purchased a total of eighteen gemstones from defendant. The total cost of the gemstones, minus shipping and handling, was stipulated by plaintiff and defendant as being in excess of $125,000. The gemstones were shipped to Aaronson from Toronto in ten separate shipments. Each shipment was paid for separately by Aaronson. During this time, defendant did not maintain an office in Michigan, and no employee, salesperson, agent, officer, or shareholder of defendant visited Michigan for the purpose of conducting business with Aaronson.

Plaintiff filed this action seeking rescission of all the gemstone sales. In her complaint, plaintiff alleged

that defendant violated both the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.* (count I), and the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.* (count III). Plaintiff also alleged that defendant had committed a common-law fraud (count II). In lieu of answering the complaint, defendant filed a motion for summary disposition, claiming (1) that the trial court's exercise of limited personal jurisdiction violated due process and (2) that the MUSA is inapplicable, given that because the gemstones were not commodities, the parties never entered into a commodities contract. The trial court agreed, and in two separate orders granted defendant summary disposition with regard to all counts.

## II. LIMITED PERSONAL JURISDICTION

This Court employs a two-step analysis when examining whether the state of Michigan may exercise limited personal jurisdiction over a defendant. First, we ascertain if jurisdiction is authorized by MCL 600.715; MSA 27A.715 (Michigan's long-arm statute). Second, we determine if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. *Starbrite Distributing, Inc v Excelda Mfg Co*, 454 Mich 302, 304; 562 NW2d 640 (1997); *Jeffrey v Rapid American Corp*, 448 Mich 178, 185; 529 NW2d 644 (1995).

### A. THE LONG-ARM STATUTE

Michigan's long-arm statute states:

The existence of any of the following relationships between a corporation or its agent and the state shall con-

stitute a sufficient basis of jurisdiction to enable the courts
of record of this state to exercise limited personal jurisdic-
tion over such corporation and to enable such courts to
render personal judgments against such corporation arising
out of the act or acts which create any of the following
relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or conse-
quences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tan-
gible personal property situated within the state.

(4) Contracting to insure any person, property, or risk
located within this state at the time of contracting.

(5) Entering into a contract for services to be performed
or for materials to be furnished in the state by the defend-
ant. [MCL 600.715; MSA 27A.715.]

Plaintiff alleges that the acts engaged in by defend-
ant are sufficient for the state to invoke its authority
to exercise limited personal jurisdiction under MCL
600.715(1), (2); MSA 27A.715(1), (2). We agree. In
*Sifers v Horen*, 385 Mich 195; 188 NW2d 623 (1971),
the Michigan Supreme Court observed that as used in
subsection 1 of the long-arm statute, the term " 'any'
means just what it says. It includes 'each' and 'every'
[business transaction]." *Id.* at 199, n 2. "Thus," this
Court has noted, "the Supreme Court interpreted [the
long-arm statute] to its full potential." *Kiefer v May*,
46 Mich App 566, 571; 208 NW2d 539 (1973). We con-
clude that the communications that took place
between Aaronson and defendant, and the shipment
of the gemstones into Michigan satisfy the require-
ments of the long-arm statute.[1] *Id.* at 570-571; *Evans*

---

[1] That the breadth of the reach afforded by the long-arm statute is
extended "to the farthest limits permitted by due process," *Sifers, supra*
at 199, was further emphasized in *Starbrite.* In *Starbrite,* the Court con-

*Tempcon, Inc v Index Industries, Inc,* 778 F Supp 371, 375 (WD Mich, 1990).

B. DUE PROCESS

We next turn to the question whether the exercise of limited personal jurisdiction over defendant is consistent with the requirements of due process. In the seminal case of *Int'l Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), the United States Supreme Court stated that "due process requires only that in order to subject a defendant to a judgment in personam, if he not be present within the territory of the forum,[2] he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, quoting *Milliken v Meyer,* 311 US 457, 463; 61 S Ct 339; 85 L Ed 278 (1940). Accord *Asahi Metal Industry Co, Ltd v Superior Court of California, Solana Co,* 480 US 102, 113; 107 S Ct 1026; 94 L Ed 2d 92 (1987); *Starbrite, supra* at 308.

When determining whether such minimum contacts exist, we apply a three-pronged test:

---

cluded that as it is employed in subsection 5 of the statute, the term *furnished* "is a broader concept than the simple concept of delivery." *Starbrite, supra* at 307. The *Starbrite* Court concluded that "the long-arm statute was satisfied because the defendant entered into a contract for materials to be furnished in Michigan." *Id.* at 307-308. The fact that the goods were shipped F.O.B. to a common carrier in St. Louis, Missouri, was not dispositive. *Id.* Accordingly, although not argued by plaintiff, we believe that the shipping of the gemstones to Aaronson in Michigan means the state also acquired limited personal jurisdiction over defendant under subsection 5. *Id.*

[2] See *Burnham v Superior Court of California, Marin Co,* 495 US 604; 110 S Ct 2105; 109 L Ed 2d 631 (1990).

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).]

Accord *Starbrite, supra* at 309; *Jeffrey, supra* at 186.

### 1. PURPOSEFUL AVAILMENT

" '[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan . . . ." *Khalaf v Bankers & Shippers Ins Co*, 404 Mich 134, 153; 273 NW2d 811 (1978). Accord *Hanson v Denckla*, 357 US 235, 253; 78 S Ct 1228; 2 L Ed 2d 1283 (1958); *Jeffrey, supra* at 187-188. "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v Denckla*, 357 US at 253, it has clear notice that it is subject to suit there . . . ." *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 297; 100 S Ct 559; 62 L Ed 2d 490 (1980). In other words, the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King Corp*

*v Rudzewicz*, 471 US 462, 475; 105 S Ct 2174; 85 L Ed 2d 528 (1985) (citations omitted).

We believe that defendant's contacts with the state were not " 'random,' 'fortuitous,' or 'attenuated.' " *Id.* While Aaronson may have initiated the first contact with defendant, defendant's active participation in the ensuing business relationship dispels the notion that defendant was somehow the passive recipient of "unilateral activity" on the part of Aaronson. *Starbrite, supra* at 310-311. Over a sixteen-month period, defendant arranged for the shipment to Aaronson of gemstones priced in excess of $125,000. If defendant wanted to avoid the prospect of being brought into court in Michigan, it could have declined to send the gemstones into the state. *Id.* at 311, n 10. Additionally, throughout this period Aaronson and defendant communicated by mail and telephone. Defendant concedes that this continuing pattern of communication was initiated by both parties. Further, some of the material mailed to Aaronson is acknowledged to have been sales literature. See *Burger King, supra* at 476 (observing that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications"); see also *Quill Corp v North Dakota*, 504 US 298, 308; 112 S Ct 1904; 119 L Ed 2d 91 (1992).

We conclude, therefore, that defendant availed itself of the opportunity to do business in Michigan. As a result, defendant should have anticipated the possibility that it could be subject to suit in the state. See *id.* at 313 (observing that in due process jurisprudence, minimum contacts serve as a "proxy for notice").

### 2. DID THE CAUSE OF ACTION ARISE FROM DEFENDANT'S CONTACTS WITH THE STATE?

As previously mentioned, plaintiff's complaint alleged: (1) violation of the MUSA, (2) common-law fraud, and (3) violation of the Michigan Consumer Protection Act. Because each count of plaintiff's cause of action was predicated on the sale of the gemstones, we find that plaintiff's cause of action did arise from defendant's contacts with the state. *Starbrite, supra* at 312.

### 3. IS THE EXERCISE OF LIMITED JURISDICTION REASONABLE?

Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Thus, courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." [*Burger King, supra* at 476-477 (citation omitted).]

Accord *Starbrite, supra* at 313.

After considering all the relevant factors, we conclude that they do not indicate that the state's exercise of limited personal jurisdiction over defendant is unreasonable. First, we believe it is self-evident that Michigan has a " 'manifest interest in providing effective means of redress' " for one of its citizens who alleges that her deceased husband had been defrauded by an out-of-state company. *World-Wide,*

*supra* at 300 (quoting *McGee v Int'l Life Ins Co*, 355 US 220, 223; 78 S Ct 199; 2 L Ed 2d 223 [1957]); *Starbrite, supra* at 313-314.

Second, we conclude that on balance, Michigan is the most convenient forum for an efficient resolution of this matter. Michigan is the location of the purchaser of the gemstones and the plaintiff. It is also the place where the gemstones were shipped. We believe that plaintiff would be severely disadvantaged if she were forced to seek legal redress outside this forum. *McGee, supra* at 223. While it may be somewhat inconvenient for defendant to litigate in this forum, we are not convinced (and defendant has not established) that this potential inconvenience renders jurisdiction in Michigan unconstitutional (i.e., that it outweighs the fact that defendant purposefully availed itself of the opportunity to do business in Michigan, and that the cause of action arose out of defendant's activities in Michigan). *Burger King, supra* at 483; *Starbrite, supra* at 313. There is also no indication in the record that defendant's case would be unduly hampered "because witnesses or evidence or the defendant [itself] . . . were immobile . . . ." *World-Wide, supra* at 301.[3]

Therefore, we hold that maintaining plaintiff's cause of action in Michigan would not "offend 'tradi-

---

[3] As Justice Brennan observed in *World-Wide, supra* at 301: "The defendant has no constitutional entitlement to the best forum or, for that matter, to any particular forum." While Justice Brennan was writing in dissent in *World-Wide*, the fairness factors he outlined were subsequently adopted by the Court in *Burger King, supra* at 482-484.

tional notions of fair play and substantial justice,'"
*Int'l Shoe, supra* at 316, quoting *Milliken, supra* at
463, given that (1) defendant established sufficient
minimum contacts with Michigan by communicating
with Aaronson and shipping the gemstones to him in
the state, and (2) defendant has failed to establish
that it would otherwise be fundamentally unfair for
the state to exercise limited personal jurisdiction in
this matter.

### III. MUSA CLAIM

In dismissing count I of plaintiff's complaint, the
trial court concluded that the MUSA was inapplicable
under the circumstances "inasmuch as the Defendant
never entered into a commodity contract nor sold a
commodity as defined therein." We disagree.

Section 401 of the MUSA contains the following rele-
vant definitions:

> (n) "Commodity" means: (1) Those goods defined as com-
> modities in the commodity futures trading commission act
> of 1974, (2) those goods commonly classified as commodi-
> ties within the normal course of business dealings, (3) any-
> thing movable which is traded or for which contracts are
> executed or issued on any board of trade, or commodity
> exchange or market, or (4) precious metals. The administra-
> tor[4] may by rule further define "commodity" or "commod-
> ity contract".

> (o) "Commodity contract" means the transactions dealing
> in, resulting in, or relating to contracts of purchase or sale
> of a commodity: for (1) delivery in the future at a specified
> time or a time to be determined or where delivery is not

---

[4] "'Administrator' means the corporation and securities bureau of the
department of commerce." MCL 451.801(a); MSA 19.776(401)(a).

customarily made, including puts, calls, or any combinations thereof; (2) for present delivery where the value of the commodity is difficult to ascertain except by a person expert in the analysis of the commodity, and the commodity is offered for sale to the general public as an investment; (3) other options; (4) margin contracts; (5) or in general, any interest in an instrument commonly known as a commodity contract. [MCL 451.801(n), (o); MSA 19.776(401)(n), (o).]

Pursuant to the statutory grant of authority, the administrator promulgated Rule 451.801.2(d), which states in pertinent part: " 'Goods commonly classified as commodities within the normal course of business dealings' include, but are not limited to: (i) Precious or semi-precious gems or imitations thereof." 1979 AC, R 451.801.2(d)(i).

Resolution of this issue turns on an interpretation of the above-quoted statutory provisions and administrative rule. Interpretation of statutes and administrative rules is a question of law reviewed de novo on appeal. *People v Williams*, 226 Mich App 568, 570; 576 NW2d 390 (1997); *Attorney General v Lake States Wood Preserving, Inc*, 199 Mich App 149, 155; 501 NW2d 213 (1993). The primary goal of judicial interpretation of statutes and administrative rules is to give effect to the intent of the authors. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996); *Lake States Wood Preserving, supra* at 155. If the language used is clear and unambiguous, a court should not look beyond the plain and ordinary meaning of that language. *People v Hack*, 219 Mich App 299, 305; 556 NW2d 187 (1996); *Lake States Wood Preserving, supra* at 155.

According to the plain and unambiguous language of Rule 451.801.2(d)(i), "[p]recious or semi-precious

gems" are included in the category of those "[g]oods commonly classified as commodities within the normal course of business dealings." The gemstones purchased by Aaronson include sapphires, tanzanite, fancy diamonds, emeralds, alexandrite, and one ruby. We conclude that these gemstones are properly classified as precious or semi-precious gems and thus fall within the statutory definition of a commodity established in MCL 451.801(n); MSA 19.776(401)(n).

We also conclude that given the clear language of MCL 451.801(o)(2); MSA 19.776(401)(o)(2), the transactions at issue should be classified as "commodity contracts" under the MUSA. The parties agree that the gemstones were delivered to Aaronson in Michigan. Further, we believe that the value of such gemstones is not readily ascertained by members of the general public. Rather, the value of these types of gemstones "is difficult to ascertain except by a person expert in the analysis of" gemstones. *Id.*

There is also evidence in the record that supports the conclusion that defendant's gemstones were being offered "to the general public as an investment." *Id.* For example, defendant's May 1992 quarterly report contains the following passage:

> Westerners who are used to gems as either heirlooms or hedges don't quite understand why the Taiwanese hoard so much gold, *and, increasingly, gems* when their economy is prosperous and stable. . . . [W]hy, it is asked, *does Taiwan have a more active market in under-the-mattress commodities than over the counter stocks?* . . . Aware of what's happening throughout Asia, the Taiwanese are buying store-of-value assets. . . . As a result, we expect Taiwan to prove a driving force in the fine gems market this year. [Emphasis added.]

Additionally, defendant's literature is punctuated with investment terminology, including numerous references to both national and global markets. One memorandum, which appears to be for general circulation to defendant's customers, refers to the gemstones held by those individual customers as a "portfolio." Finally, we note that defendant's May 1992 quarterly report analyzes the economic growth potential of the following gemstones: fancy color diamonds, emeralds, rubies, sapphires, tanzanite, and tourmaline.[5] We hold, therefore, that the trial court erred in summarily dismissing count I of plaintiff's complaint.[6]

For the above-stated reasons, we reverse the trial court's grant of summary disposition. The case is hereby remanded for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

---

[5] Other than tourmaline, Aaronson purchased at least one of each of these gemstones.

[6] In ruling that the transactions between Aaronson and defendant were not commodity contracts within the meaning of MCL 451.801(o); MSA 19.776(401)(o), the trial court mistakenly relied on *Dep't of Commerce v DeBeers Diamond Investment, Ltd*, 89 Mich App 406; 280 NW2d 547 (1979). In *DeBeers*, this Court addressed the question whether the sale of diamonds constituted an "investment contract." *Id.* at 409. Under the MUSA, an investment contract is a security, MCL 451.801(l); MSA 19.776(401)(l), not a commodity. Accordingly, *DeBeers* is inapplicable to the case at hand.