# STATE OF MICHIGAN

# COURT OF APPEALS

BETTY JENSEN, by JASON JENSEN, personal
representative,

UNPUBLISHED
February 19, 2015

Petitioner-Appellee,

v

No. 319098
Muskegon Circuit Court
LC No. 12-048738-AA

DEPARTMENT OF HUMAN SERVICES,

Respondent-Appellant.

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

We granted leave to appeal to consider a circuit court's appellate review of an
administrative decision. Were we permitted to review the facts de novo, we likely would have
reached a different decision than the Department of Human Services (DHS) regarding the
petitioner's Medicaid eligibility. However, we are only permitted to review de novo the circuit
court's interpretation of the administrative policies underlying the DHS's decision. And the
DHS followed the plain language of the applicable policies in rendering its decision.
Accordingly, we are bound to conclude that the circuit court did not apply correct legal
principles in applying a different policy interpretation. We therefore reverse.

## I. BACKGROUND

Betty Jensen was an elderly woman with dementia. She lived in her home without
assistance until May 2011. At that time, Jensen's concerned grandson, Jason Jensen, acted on
Jensen's behalf and hired a non-relative, Teresa Alexander, to serve as Jensen's home health
aide. Alexander was hired through an informal agreement and no contract entered. Between
May 2011 and March 21, 2012, Jason paid Alexander biweekly for her time, using nearly
$19,000 of Jensen's assets.

By March 21, 2012, Jensen's condition had worsened and she entered a nursing home.
At some point thereafter, Jensen executed a written contract with Jason agreeing to reimburse
him for mileage he accumulated while managing her affairs for the past year. Jensen then
remitted $1,400 to Jason.

On April 30, 2012, Jason applied for Medicaid benefits on Jensen's behalf. As described
in *Mackey v Dep't of Human Serv*, 289 Mich App 688, 693; 808 NW2d 484 (2010), participation

-1-

in Medicaid is "needs-based." Accordingly, the Department of Human Services (DHS) reviewed Jensen's assets, income, and expenditures to determine if she qualified for benefits. While Jensen was eligible, the DHS penalized her for "divesting" funds. Specifically, the DHS found that the payments to Alexander, the mileage reimbursement to Jason, and a $28,128 gift to Jason were "divestments."[1] As a result of these divestments, the DHS delayed Jensen's Medicaid benefits for 7 months and 2 days. Jensen died on August 28, 2012, before Medicaid began covering her nursing home expenses.

Jason concedes that his grandmother's $28,128 gift to him was a divestment under Medicaid policies. He challenged before an administrative law judge (ALJ) and then in a circuit court appeal that Jensen's payments to Alexander and mileage reimbursement to him should not be treated as divestments under the "Home Caretaker & Personal Care Contracts" provision of BEM 405—the applicable policy upon which the DHS relied. That policy states:

[¶ 1] A contract/agreement that pays prospectively for expenses such as repairs, maintenance, property taxes, homeowner's insurance, heat and utilities for real property/homestead or that provides for monitoring health care, securing hospitalization, medical treatment, visitation, entertainment, travel and/or transportation, financial management or shopping, etc. would be considered a divestment. Consider all payments for care and services which the client made during the look back period as divestment.

[¶ 2] **Note:** The preceding are examples and should not be considered an all inclusive or exhaustive list.

[¶ 3] Relatives who provide assistance or services are presumed to do so for love and affection, and compensation for past assistance or services shall create a rebuttable presumption of a transfer for less than fair market value. A relative is anyone related to the client by blood, marriage or adoption.

[¶ 4] Such contracts/agreements shall be considered a transfer for less than fair market value unless the compensation is in accordance with all of the following:

- The services must be performed **after** a written legal contract/agreement has been executed between the client and provider. The services are not paid for until the services have been provided. The contract/agreement must be dated and the signatures must be notarized; **and**

- At the time of the receipt of the services, the client is not residing in a nursing facility, adult foster care home, institution for mental diseases, inpatient hospital, intermediate care facility for mentally retarded or

---

[1] A "divestment" is a transfer made for less than fair market value within a specified "look back period" that is made to qualify or remain eligible for Medicaid benefits. Bridges Eligibility Manual (BEM) 400, January 1, 2015, p 1; BEM 405, April 1, 2012, p 1.

eligible for home and community based waiver, home health or home help; **and**

- At the time services are received, the services must have been recommended in writing and signed by the client's physician as necessary to prevent the transfer of the client to a residential care or nursing facility. Such services cannot include the provision of companionship; **and**

- DHS will verify the contract/agreement by reviewing the written instrument between the client and the provider which must show the type, frequency and duration of such services being provided to the client and the amount of consideration (money or property) being received by the provider, **or** in accordance with a service plan approved by DHS. If the amount paid for services is above fair market value, then the client will be considered to have transferred the asset for less than fair market value. If in question, fair market value of the services may be determined by consultation with an area business which provides such services; **and**

- The contract/agreement must be signed by the client or legally authorized representative, such as an agent under a power of attorney, guardian, or conservator. If the agreement is signed by a representative, that representative cannot be the provider or beneficiary of the contract/agreement.

[¶ 5] Assets transferred in exchange for a contract/agreement for personal services/assistance or expenses of real property/homestead provided by another person after the date of application are considered available and countable assets. [BEM 405, April 1, 2012, pp 6-7 (numeration added by circuit court, emphasis in original).]

The ALJ upheld the DHS's treatment of these transfers as divestments. The transfers were made under personal care agreements, the ALJ reasoned, and were therefore presumed to be divestments under ¶ 1 unless they conformed to the requirements of ¶ 4. Jason admitted that neither transfer occurred under circumstances that rebutted the presumption.

On appeal, the circuit court reversed the ruling in relation to Jensen's payments to Alexander. The court interpreted BEM 405 differently, concluding that ¶ 1 applies only to arrangements where the applicant pays up front for services, rendering an assessment of fair market value impossible. The elements to rebut a divestment presumption located in ¶ 4, the court ruled, apply only to agreements with relatives as contemplated in ¶ 3. Under this reading, Jensen's contemporaneous payments to Alexander, a non-relative, for her services could not be characterized as divestments.

We subsequently granted the DHS's application for leave to appeal the circuit court's judgment. *Jensen v Dep't of Human Serv*, unpublished order of the Court of Appeals, entered April 30, 2014 (Docket No. 319098).

## II. ANALYSIS

The circuit court inaccurately interpreted BEM 405 and therefore exceeded the scope of its authority in reversing the ALJ. This Court recently outlined the standards governing appellate review of an administrative decision in *Nat'l Wildlife Federation v Dep't of Environmental Quality*, 306 Mich App 369, 372-373; 856 NW2d 394 (2014):

> The circuit court's task was to review the administrative decision to determine if it was authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 24.306(1). An agency decision is not authorized by law if it violates constitutional or statutory provisions, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious. *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488; 586 NW2d 563 (1998).

> "[W]hen reviewing a lower court's review of agency action, this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). "This latter standard is indistinguishable from the clearly erroneous standard . . . . [A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id.* at 234-235.

> A tribunal's interpretation of a statute is subject to review de novo. *In re Complaint of Rovas*, 482 Mich 90, 102; 754 NW2d 259 (2008). Likewise a tribunal's interpretation of an administrative rule. *Aaronson v Lindsay & Hauer Int'l Ltd*, 235 Mich App 259, 270; 597 NW2d 227 (1999). A tribunal's evidentiary decisions are reviewed for an abuse of discretion. See *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993).

The rules of statutory construction apply with equal force when interpreting administrative rules. *Great Wolf Lodge of Traverse City, LLC v Public Serv Comm*, 489 Mich 27, 37; 799 NW2d 155 (2011).

Looking at the plain language of BEM 405, it is clear that the circuit court incorrectly interpreted ¶ 1:

> A contract/agreement [1] *that pays prospectively for expenses such as repairs, maintenance, property taxes, homeowner's insurance, heat and utilities for real property/homestead* **or** [2] *that provides for monitoring health care, securing hospitalization, medical treatment, visitation, entertainment, travel and/or transportation, financial management or shopping,* etc. would be considered a divestment. Consider all payments for care and services which the client made during the look back period as divestment. [Alterations added.]

The first sentence opens with a subject noun "a contract/agreement." That subject noun is modified by two separate clauses, each beginning with the word "that" and separated by the conjunction "or". "That" is a "defining, or restrictive pronoun." Strunk & White, *The Elements of Style* (3d ed, 1979), p 59. Accordingly, items [1] and [2] define the subject noun "a contract/agreement." "The term 'or' is 'used to connect words, phrases, or clauses representing alternatives.'" *People v Williams*, 288 Mich App 67, 75; 792 NW2d 384 (2010), quoting *Random House Webster's College Dictionary* (1997). This sentence therefore refers to two separate categories of "contract[s]/agreement[s]." The first category is contracts where the client pays for services up front, before any work is done: "a contract/agreement that pays prospectively." The second category is any contract or agreement that provides for services essentially encompassing a home health aide: "a contract/agreement that provides for monitoring health care, securing hospitalization, medical treatment, visitation, entertainment, travel and/or transportation, financial management or shopping, etc." Prospective payment is not required to fit into the second category.

Notably, this paragraph does not describe the service provider. By failing to use the term relative or non-relative, the DHS made the paragraph applicable to anyone who provides services to the elderly applicant. Also, the first paragraph creates a "presumption" even though that word is not used in this section. The second sentence provides: "Consider all payments for care and services which the client made during the look back period as divestment." Accordingly, in applying ¶ 1, one must lead with the presumption that the payment was a divestment. Therefore, there must be a mechanism to rebut that presumption, which is ¶ 4 as noted below.

Paragraph 3 of BEM 405 provides a rebuttable presumption that "[r]elatives who provide assistance or services are presumed to do so for love and affection," and do not expect compensation. If an elderly applicant suddenly compensates a relative for services provided in the past, the DHS will presume that this was not a fair market trade of money for services. Accordingly, any payment made to the relative is presumed to be a divestment.

Paragraph 4 begins: "Such contracts/agreements shall be considered a transfer for less than fair market value unless the compensation is in accordance with all of the following[.]" As noted by the DHS, ¶ 4 must be connected with ¶ 1. Only ¶ 1 refers to contracts and agreements. If ¶ 4 does not modify ¶ 1, a claimant would have no way to rebut the presumption in ¶ 1. The contracts and agreements in ¶ 1 can be made with anyone, including a relative. There is simply a heightened presumption when the services are provided by a relative. Paragraph 4 lays the groundwork for rebutting the presumption first stated in ¶ 1 regarding prospectively-paid contracts/agreements and personal service contracts and emphasized in ¶ 3 in relation to relatives.

Accordingly, to overcome the presumptions stated in ¶ 1 and ¶ 3 that a contract or agreement amounted to a divestment, the claimant must establish that the contract or agreement meets the five elements outlined in ¶ 4. Jason conceded below that neither the arrangement with Alexander nor the mileage reimbursement contract satisfied ¶ 4. In relation to the payments to Alexander, no "written legal contract/agreement" was ever drafted, let alone signed and notarized. Accordingly, all the services were performed before, not after, such a document was executed. Although Jensen's doctor noted in a medical record that she was doing better with the benefit of meals on wheels and a home health aide, the doctor never "recommended in writing"

that such services were "necessary to prevent transfer of the client to a residential care or nursing facility." Under the plain language of BEM 405, Jensen's payments to Alexander do not meet the necessary criteria to rebut the presumption identified in ¶ 1. Accordingly, this compensation was a divestment.[2] Similarly, Jason admitted the mileage reimbursement contract was entered despite the absence of a doctor's recommendation and after the services were rendered. The contract did not "show the type, frequency and duration of such services being provided to the client" as described in the fourth element of ¶ 4. Accordingly, the mileage payment to Jason also qualified as a divestment and the circuit court should have affirmed the ALJ.

Jason raised alternative grounds to overturn the ALJ's decision, all of which the circuit court rejected. He now revives those arguments as alternative grounds to affirm the circuit court's decision. We agree with the circuit court, however, that these grounds are without merit.

First, Jason contends that under the common law a person can enter an implied contract with another to provide services. If the services are provided under such an oral agreement, the services must be compensated. Therefore, Jason asserts, BEM 405 violates common-law implied-contract principles. Yet, BEM 405 does not prevent anyone from entering oral contracts for services or prevent the service provider from getting paid. Rather, if the service falls within the realm of BEM 405, and the applicant paid enough to sound a red flag for the DHS employee adjudging the client's Medicaid eligibility, the compensation paid under that oral contract may be treated as a divestment. This argument is simply out of place.

Jason argues that BEM 405 is more restrictive than federal Social Security law, rendering it invalid. However, 42 USC 1396n(d)(1) provides that a state plan must include coverage for an elderly person's "home or community-based services" geared toward allowing that person to remain in his or her home and specifically limits that coverage to situations where the services "are provided pursuant to a written plan of care." Requiring a doctor recommendation is consistent with this requirement, as is requiring a contract with specific details of the services to be provided.

Finally, Jason revives his argument that BEM 405 violates the Americans with Disabilities Act by forcing elderly people to forego in-home care and accept premature "institutionalization." However, BEM 405 does not force elderly people into nursing homes. An elderly person is free to hire a home health care aide. The applicant must prove that he or she

---

[2] We note, however, that it does not appear from the factual record that Jensen overpaid for Alexander's services, or hired Alexander unnecessarily. If we were not bound by the plain language of BEM 405, and were we permitted de novo review of the lower tribunals' factual considerations, we would reach quite a different result.

did not fritter away his or her money for unnecessary services simply in order to become eligible for Medicaid.  An elderly person who truly needs assistance in the home can secure proof of that need through his or her doctor.

We reverse.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher