*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ATTORNEY GENERAL and STATE of MICHIGAN,

        Plaintiffs,

v

DOMTAR INDUSTRIES, INC., and E.B. EDDY PAPER, INC.,

        Defendants/Third-Party Plaintiffs-Appellants,

v

TERRICO GENERAL, INC., formerly known as TECHNI-COMP (COMPOSTING SPECIALISTS), LTD.,

        Third-Party Defendant-Appellee,

and

TECHNI-COMP (COMPOSTING SPECIALISTS), INC.,

        Third-Party Defendant.

UNPUBLISHED
August 11, 2025
10:15 AM

No. 369930
St. Clair Circuit Court
LC No. 22-002604-NZ

---

TECHNI-COMP (COMPOSTING SPECIALISTS), INC.,

        Plaintiff,

v

DOMTAR INDUSTRIES, LLC, E.B. EDDY PAPER, INC., and CHRISTINE J. LOEFFLER,

No. 369935
St. Clair Circuit Court
LC No. 23-000335-CZ

---

Defendants/Third-Party Plaintiffs-
Appellants,

v

TERRICO GENERAL, INC., formerly known as
TECHNI-COMP (COMPOSTING SPECIALISTS),
LTD.,

Third-Party Defendant-Appellee.

Before:  YOUNG, P.J., and LETICA and KOROBKIN, JJ.

PER CURIAM.

In these consolidated appeals, defendants/third-party plaintiffs, Domtar Industries, E.B. Eddy Paper, Inc., and Christine J. Loeffler (collectively, "Domtar"), appeal by leave granted[1] the trial court's February 9, 2024 order granting summary disposition in favor of third-party defendant, Terrico General, Inc., formerly known as Techni-Comp (Composting Specialists), Ltd. ("Terrico"), under MCR 2.116(C)(1) on the basis of a lack of personal jurisdiction.  For the reasons stated in this opinion, we reverse and remand.

## I.  BACKGROUND AND FACTS

These appeals arise from claims filed in late 2022 by the Attorney General and the state of Michigan against Domtar Industries and E.B. Eddy Paper, Inc. ("Eddy Paper"),[2] alleging that paper waste from their paper mill contained hazardous perfluoroalkyl and polyfluoroalkyl substances that contaminated the soil and drinking water at and around a composting site that the waste was delivered to—4152 Dove Road in Port Huron—which is owned by the Michigan corporation, Techni-Comp (Composting Specialists), Inc. ("Techni-Comp, Inc.").

In Docket No. 369930, Domtar Industries, LLC and Eddy Paper filed third-party complaints against Techni-Comp, Inc., a Michigan corporation, and Terrico, a Canadian corporation, for contribution under Part 201 of Michigan's Natural Resources and Environmental Protection Act, for breach of contract, and for declaratory relief.  In Docket No. 369935, Techni-Comp, Inc., filed a separate action against Domtar for money damages in February 2023, alleging that it did not know that it was receiving contaminated paper waste.  Domtar later filed a third-party complaint against Terrico for breach of contract and declaratory relief in Docket No. 369935. The third-party complaints in both cases generally arise out of a dispute over whether Terrico

---

[1] *Attorney General v Domtar Indus, Inc*, unpublished order of the Court of Appeals, entered October 7, 2024 (Docket No. 369930); *Techni-Comp (Composting Specialists), Inc v Domtar Indus, LLC*, unpublished order of the Court of Appeals, entered October 7, 2024 (Docket No. 369935).

[2] Domtar Industries obtained an interest in Eddy Paper in 1998.

agreed in a 1997 indemnity letter to accept liability for paper waste that it arranged to remove from Eddy Paper's paper mill in Port Huron. At issue in these appeals are Domtar's third-party claims for indemnification against Terrico in both actions and specifically whether the trial court may exercise personal jurisdiction over Terrico, the Canadian corporation, to adjudicate those claims.

Much of the dispute (and, at times, confusion) in these appeals arises from two parties' nearly identical business names and the unclear identity of the entity Techni-Comp Environmental, which is listed on a majority of the documents detailing the alleged business activities at issue in the 1990s. According to Domtar, Terrico and Techni-Comp Environmental are the same entity. Domtar produced evidence that Terrico was formerly known as Techni-Comp (Composting Specialists), Ltd., until 2008. But according to Terrico, Techni-Comp Environmental is Techni-Comp, Inc., the Michigan entity in the suit, and the only entity that did business with Domtar. As analyzed below, viewing the facts in a light most favorable to Domtar, Domtar has made a prima facie showing that Terrico operated as Techni-Comp Environmental at the time of the business activities that are relevant to these appeals. Because of this, we attribute references to "Techni-Comp Environmental" and "Techni-Comp (Composting Specialists), Ltd." in the 1990s documents to Terrico, the Canadian entity, which should not be confused with Techni-Comp, Inc., the separate Michigan entity in the suit.

According to Domtar, Techni-Comp Environmental, through its president, Charles Dally, approached Eddy Paper in 1996, requesting to remove and utilize the paper pulp waste from Eddy Paper's Port Huron paper mill. Before consenting to Techni-Comp Environmental's request, Eddy Paper required that the entities execute an agreement to insulate Eddy Paper from actions related to the paper waste after it left Eddy Paper's possession. The following year, Eddy Paper and Techni-Comp Environmental memorialized their agreement—in which Techni-Comp Environmental would remove and ship the paper waste produced by Eddy Paper's paper mill to a new composting site established by Techni-Comp Environmental—in an indemnity letter signed by Dally. The letter, which was on Techni-Comp Environmental letterhead with a Canadian address in the footer, provided:

> Techni-Comp (Composting Specialists) Ltd. undertakes the removal of paper pulp discard and its subsequent utilization through thermophilic composting. We will in no way constitute a liability on the following companies:
>
> E.B. Eddy Paper Inc., Port Huron
>
> E.B. Eddy Forest Products Ltd.
>
> George Weston Ltd.
>
> Upon such removal, the ownership of the material will become the absolute property of our company and you will in no way be involved in its subsequent use.

In February 1998, Dally sent a letter to the St. Clair Solid Waste Management Committee, explaining Techni-Comp Environmental's "intent to establish a composting facility in St. Clair County." He attached a sketch of the composting site plan; a description of the facility; and a list of Canadian counties, municipalities, and businesses with which Techni-Comp Environmental worked. Later that month, Eddy Paper notified the Michigan Department of Environmental

Quality (MDEQ) of its intent to send its paper fiber waste to a new composting facility—Techni-Comp Environmental's composting site in Port Huron. The letter listed a Canadian address and phone number for Dally of Techni-Comp Environmental as the contact for the composting site.

A fax cover letter dated March 1998 from Christine Loeffler, the environmental superintendent at Eddy Paper, to Dally described indemnification negotiations regarding a draft letter.[3] The 1998 letter itself was not produced during the proceedings below, only the fax cover sheet. In June 1998, Dally and Terry Bambury, the officers and directors of Terrico, incorporated Techni-Comp, Inc., in Michigan—the other entity that Domtar is suing for indemnification. That month, Techni-Comp Environmental secured "commercial general liability" insurance to conduct operations in Michigan. At some point in 1998, Domtar Industries, LLC, acquired Eddy Paper, although they remain separate legal entities.

In April 1999, the Port Huron Township Planning Commission granted Techni-Comp Environmental conditional-use approval to establish a composting operation at 4152 Dove Road; however, upon the establishment of the composting site, the site was put in the name of Techni-Comp, Inc., the Michigan entity, not Techni-Comp Environmental.

According to Domtar, at the direction of Techni-Comp Environmental, Eddy Paper instructed Waste Management to transport Eddy Paper's paper waste to Techni-Comp, Inc.'s composting site between 2002 and 2020. According to Terrico, Eddy Paper conducted business with Techni-Comp, Inc., not Terrico, and asserted that Techni-Comp, Inc., was the entity who directed Waste Management to transport the paper waste. The affidavit of Loeffler, who was employed by Eddy Paper since 1991, stated that Eddy Paper did not know that Techni-Comp, Inc., existed during Eddy Paper's course of business with Techni-Comp Environmental. Dally's affidavit stated that Terrico was not a party to the 1997 indemnity letter and that Techni-Comp, Inc., was the entity that removed the paper waste and conducted the business dealings at issue. Dally's and Bambury's affidavits stated that Terrico never did any business in Michigan and that Terrico and Techni-Comp, Inc., were completely separate entities.

In both Docket Nos. 369930 and 369935, in lieu of answering the third-party complaints, Terrico moved for summary disposition under MCL 2.116(C)(1), contending that the court lacked personal jurisdiction over Terrico under both MCL 600.711 (general personal jurisdiction) and MCL 600.715 (limited personal jurisdiction, commonly known as Michigan's long-arm statute). Terrico further argued that, even if Domtar satisfied MCL 600.715, the trial court's exercise of personal jurisdiction over Terrico would violate due process. In response, Domtar did not argue that the trial court had general personal jurisdiction over Terrico, but did argue that personal jurisdiction was proper under Michigan's long-arm statute and that exercise of such jurisdiction did not violate due process.

Following a hearing, the trial court issued an opinion and order granting Terrico's motions for summary disposition. The trial court concluded that it did not have limited personal jurisdiction

---

[3] The fax cover letter stated: "Here is a draft copy of the indemnification letter drafted by our lawyers. Please review with your attorney and let me know if there is anything we need to discuss. Once this issue is straightened out with Waste Management[,] we can sign this."

over Terrico because Terrico's activities did not meet the business transaction requirement of MCL 600.715(1). The trial court further concluded that, even if Terrico's conduct satisfied MCL 600.715(1), its exercise of jurisdiction over Terrico would violate due process because Domtar "failed to produce evidence that this cause of action arose from Terrico's activities in this State." Domtar now appeals, by leave granted, the trial court's order in both cases.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial judge's decision on a motion for summary disposition. The legal question of whether a court possesses personal jurisdiction over a party is also reviewed de novo." *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012) (citation omitted). "This case also presents the legal question of whether the exercise of personal jurisdiction over a nonresident . . . is consistent with the notions of fair play and substantial justice required by the Due Process Clause of the Fourteenth Amendment, which we likewise review de novo." *Id.*

## III. ANALYSIS

"Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party." *Id*. at 221 (quotation marks and citation omitted). "When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Id.*

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. [*Id*. at 222 (quotation marks and citations omitted).]

We employ a two-step analysis when examining whether a Michigan court may exercise limited personal jurisdiction over a defendant. *Id*. "First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment." *Id*. (quotation marks and citation omitted). "Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident." *Id*. "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Id*. at 222-223 (quotation marks and citation omitted).

## A. IDENTITY OF TECHNI-COMP ENVIRONMENTAL

As previously mentioned, central to these appeals, and hotly disputed by the parties, is whether the alleged business activities of Techni-Comp Environmental at issue can be attributed to Terrico, the Canadian corporation. According to Domtar, the trial court has personal jurisdiction over Terrico because Terrico and Techni-Comp Environmental are the same entity. By contrast, according to Terrico, Techni-Comp Environmental is Techni-Comp, Inc., the Michigan corporation. As a threshold issue, therefore, and before directly addressing the merits of the personal jurisdiction issue on appeal, we must determine if, when viewing the evidence in a light most favorable to Domtar, Domtar made a prima facie showing that Terrico operated as Techni-Comp Environmental at the time of the business dealings. We hold that it did.

According to record evidence submitted by Domtar, Techni-Comp Environmental, through Dally, approached Eddy Paper in 1996, requesting to remove and utilize the paper pulp waste from Eddy Paper's Port Huron paper mill. The 1997 indemnity letter and the 1998 notice to the St. Clair County Solid Waste Management Committee are on Techni-Comp Environmental letterhead with a Canadian address and contact information in the footers. The 1998 notice provided a list of various Canadian counties, municipalities, and businesses with which Techni-Comp Environmental worked. Eddy Paper's February 1998 letter to MDEQ regarding its intent to use Techni-Comp, Inc.'s composting site listed Dally of Techni-Comp Environmental as the contact for the composting site along with a Canadian address and contact information. The Port Huron Township letter detailing its April 1999 conditional approval of the composting operation was addressed to Dally of "Techni-Comp" with a Canadian address. The township letter, in explaining its approval, stated, *inter alia*, that "[t]he applicant (Techni-Comp) had shown experience and capabilities in this operation in Ontario." Techni-Comp, Inc., was not incorporated in Michigan until June 1998, approximately one year after the date of the 1997 indemnity letter.

Domtar "need only present evidence sufficient to establish prima facie [its] jurisdictional claims notwithstanding the contrary presentation by the moving party." *Yoost*, 295 Mich App at 226 (quotation marks and citation omitted). "A party may establish a case with circumstantial evidence. And a prima facie case may be established using reasonable inferences provided sufficient evidence is introduced to take the inferences out of the realm of conjecture." *Id.*

Applying that standard here, Domtar made a prima facie showing that Terrico operated as Techni-Comp Environmental at the time of the business dealings. First, the several pieces of correspondence detailing the composting business dealings in the 1990s listed the same Canadian address for Techni-Comp Environmental that Terrico currently uses, supporting a reasonable inference that Terrico operated as Techni-Comp Environmental during the relevant time period. Second, in the township's letter to "Techni-Comp" regarding its 1999 conditional approval, the township emphasized Techni-Comp's "experience and capabilities in this operation in Ontario." Given that Techni-Comp, Inc., is a Michigan corporation and the record is devoid of evidence that it conducted business activities in Canada, another reasonable inference is that the township understood "[t]he applicant (Techni-Comp)" to be the Canadian corporation, Terrico. Third, Techni-Comp, Inc., the Michigan entity, was not formed until mid-1998, approximately a year after the original dealings were memorialized in the 1997 indemnity letter, which again supports a reasonable inference that dealings with Techni-Comp Environmental were dealings with Terrico. Relying on the uncontroverted allegations, resolving factual disputes in Domtar's favor, and

viewing the evidence (including the identical Canadian addresses, previous Canadian business activities, and incorporation timeline) in a light most favorable to Domtar, we hold that Domtar has established a prima facie case that Terrico operated as Techni-Comp Environmental at the time of the activities in question.

## B. LONG-ARM STATUTE

Having determined that Domtar made a prima facie showing that Terrico operated as Techni-Comp Environmental at the time of the relevant business dealings, we now consider whether the trial court had limited personal jurisdiction over Terrico under Michigan's long-arm statute, MCL 600.715. We conclude that it did.

The statute provides, in relevant part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

"The word 'any' within the statute has been interpreted to include[] 'each' and 'every.' It comprehends 'the slightest.' " *Yoost*, 295 Mich App at 229 (quotation marks and citation omitted). In *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 430; 633 NW2d 408 (2001), we acknowledged that the phrase "transaction of any business" is not statutorily defined, and, therefore, we rely on dictionary definitions to determine its meaning. The *Oberlies* Court further stated:

> "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit." *Id*. Our Legislature's use of the word "any" to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction. See . . . *Viches v MLT, Inc*, 127 F Supp 2d 828, 830 (ED Mich, 2000) (Judge Paul Gadola stating: "The standard for deciding whether a party has transacted any business under § 600.715[1] is extraordinarily easy to meet. 'The only real limitation placed on this [long arm] statute is the due process clause.' " [citation omitted]). [*Id*.]

"[T]he breadth of the reach afforded by the long-arm statute is extended to the farthest limits permitted by due process." *Aaronson v Lindsay & Hauer Int'l Ltd*, 235 Mich App 259, 263 n 1; 597 NW2d 227 (1999) (quotation marks and citation omitted).

Given the "breadth of the reach afforded by the long-arm statute," *id.*, and our determination above that Domtar made a prima facie showing that Terrico operated as Techni-Comp Environmental, we have little difficulty concluding that Terrico's alleged activities amounted to the transaction of any business in Michigan within the meaning of MCL 600.715(1). Viewing the evidence in a light most favorable to Domtar, Terrico sought out and negotiated business opportunities with a Michigan company, applied for and obtained a composting permit from a Michigan township, and directed a Michigan company's transport of paper waste to a composting site from one Michigan location to another. These are quintessential business transactions within the state.

The trial court, in concluding otherwise, found that Terrico's incomplete indemnification negotiations with Domtar in the 1998 fax cover sheet did not meet the business transaction requirement of MCL 600.715(1) because "[c]ontract negotiations without a final agreement or any performance of that agreement are not a sufficient basis for this Court to exercise jurisdiction." It further found that Terrico's actions of obtaining a business permit and insurance coverage were "mere preparations" for business activities in Michigan that did not begin until four years later and in which Terrico did not participate. The trial court also found that, even if Dally "directed" the transport of the paper waste, he would have done so as the president of Techni-Comp, Inc., not Terrico, "which was a matter of public record at the time that [the] alleged 'direction' took place."

We agree with Domtar, however, that the trial court erred by resolving disputes of fact in favor of Terrico. For instance, Dally's affidavit for Terrico averred that Terrico was "not involved" in the transportation of the paper waste to the composting site and that Waste Management paid Techni-Comp, Inc. a "dumping fee" after Eddy Paper paid Waste Management for the removal. But Loeffler's affidavit for Domtar stated that Terrico directed Eddy Paper to have Waste Management transport the paper waste and that Eddy Paper's business dealings were with Terrico, not Techni-Comp, Inc., because it never did business with Techni-Comp, Inc. or knew that it existed. With Terrico and Domtar having submitted conflicting affidavits regarding Terrico's involvement in the transportation of the paper waste, factual disputes must be resolved in Domtar's favor on Terrico's motion for summary disposition under MCR 2.116(C)(1). See *Yoost*, 295 Mich App at 222.

In addition to Terrico directing Waste Management's transport of the paper waste within Michigan, Domtar's evidence shows that Terrico sought out and negotiated with Eddy Paper to transact business at a Michigan composting site, secured conditional approval to establish the site from Port Huron Township, and notified St. Clair County about the site development. This Court has previously held that a defendant's request to transact business with a Michigan corporation and several instances of communication and correspondence with a Michigan party regarding that business activity "amply establish[ed] defendant's 'transaction of any business within the state.' " *WH Froh, Inc v Domanski*, 252 Mich App 220, 229; 651 NW2d 470 (2002), quoting MCL 600.705(1).[4] Given that "circumstantial evidence" and "reasonable inferences" of the "slightest"

---

[4] The language of MCL 600.705(1), the long-arm statute regarding limited personal jurisdiction over individuals, is virtually identical to that of its corporate counterpart, MCL 600.715(1).

transaction of business is sufficient to satisfy MCL 600.715(1), *Yoost*, 295 Mich App at 226, 229, a standard which is "extraordinarily easy to meet," *Oberlies*, 246 Mich App at 430, Domtar's evidence of these business activities by Terrico satisfy MCL 600.715(1).[5]

## C. DUE PROCESS

Because Domtar made out a prima facie case that personal jurisdiction over Terrico could be exercised under the relevant long-arm statute, we must next determine whether that exercise is permissible under due-process principles. *Electrolines, Inc v Prudential Assurance Co*, 260 Mich App 144, 167; 677 NW2d 874 (2003). We conclude that it is.

"The Due Process Clause requires that the exercise of personal jurisdiction comport with 'traditional notions of fair play and substantial justice.' " *Oberlies*, 246 Mich App at 432-433, quoting *Int'l Shoe Co v Washington*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945). "The 'constitutional touchstone' of a due process analysis with respect to personal jurisdiction is whether the defendant purposely established the minimum contacts with the forum state necessary to make the exercise of jurisdiction over the defendant fair and reasonable." *Oberlies*, 246 Mich App at 433 (citations omitted). Courts use a three-pronged test to determine whether a defendant has minimum contacts with Michigan sufficient to permit the exercise of limited personal jurisdiction in accordance with due process:

> "First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable." [*Jeffrey v Rapid Am Corp*, 448 Mich 178, 186; 529 NW2d 644 (1995), quoting *Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).]

"Whether jurisdiction is proper under the minimum contacts test does not depend on the weight of the factors individually. Rather, the primary focus when analyzing personal jurisdiction should be on 'reasonableness' and 'fairness.' " *Oberlies*, 246 Mich App at 433, quoting *Jeffrey*, 448 Mich at 186 (quotation marks omitted). Courts must analyze the facts case by case to determine if "the relationship between the defendant, the forum, and the litigation" allows for the exercise of personal jurisdiction over a defendant. *Oberlies*, 246 Mich App at 433-434.

Under the first prong, we analyze whether Terrico purposefully availed itself of conducting business activities in Michigan. *Jeffrey*, 448 Mich at 186.

> A "purposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly

---

[5] In light of Terrico's significant business activities, we find it unnecessary to decide whether the 1997 indemnity letter or the 1998 fax cover sheet are sufficient to prove the existence of a binding contractual agreement for Terrico's indemnification of Domtar. These are questions for the merits of Domtar's third-party claims, not personal jurisdiction over Terrico.

regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court. [*Id*. at 187-188 (citation omitted).]

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.' " *Burger King Corp v Rudzewicz*, 471 US 462; 105 S Ct 2174; 85 L Ed 2d 528 (1985) (citations omitted).

Again, we must view the evidence in the light most favorable to the nonmoving party, resolving all factual disputes in its favor. *Yoost*, 295 Mich App at 222. In this case, Domtar produced evidence that Dally, as president of Terrico, sought out Eddy Paper, a Michigan company, to establish a business relationship regarding the removal and transportation of paper waste to a Michigan composting site. Domtar also produced evidence that Terrico then obtained written conditional approval from Port Huron Township and notified St. Clair County of its intent to establish a Michigan compositing site. Given that jurisdiction cannot be defeated merely because a defendant is not physically present in Michigan and that Terrico "reache[d] beyond its own state and purposefully avail[ed] itself of the privilege of exploiting forum-based business opportunities," it is reasonable for Terrico to expect to be haled into a Michigan court. *Jeffrey*, 448 Mich at 188.

Next, even when a defendant purposefully avails itself of the forum jurisdiction, the connection between a plaintiff's "cause of action must arise from the circumstances creating the jurisdictional relationship between the defendant and the foreign state." *Oberlies*, 246 Mich App at 435 (quotation marks and citation omitted). In other words, a defendant's activities in Michigan must, "in a natural and continuous sequence, have caused the alleged injuries forming the basis of the plaintiff's cause of action." *Id*. at 437. Here, Terrico's business activities in Michigan regarding the paper waste removal and transport to the composting site caused the circumstances in which Domtar's third-party claims for breach of contract, statutory contribution, and declaratory judgment arise. Therefore, the connection between Terrico's activities and Domtar's claims satisfies the second prong of the due process analysis.

Finally, we must determine whether Terrico's activities were substantially connected with Michigan to make the exercise of jurisdiction over Terrico reasonable—in other words, "whether Michigan's exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Starbrite Distrib, Inc v Excelda Mfg Co*, 454 Mich 302, 313; 562 NW2d 640 (1997). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 US at 477. Although "the burden on the defendant is a primary concern . . . it should be considered in light of other relevant factors," *Starbrite*, 454 Mich at 313, such as

the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies;

-10-

and the shared interest of the several States in furthering fundamental substantive social policies. [*World-Wide Volkswagen Corp v Woodson*, 444 US 286, 292; 100 S Ct 559; 62 L Ed 2d 490 (1980).]

In light of these factors, there is no compelling case to hold that subjecting Terrico to Michigan jurisdiction would be unreasonable or unfair. As Domtar points out, Michigan has an interest in the adjudication of an indemnification dispute arising out of the contamination of its real property and no other jurisdiction has a stronger interest than Michigan in the resolution of the controversy. Domtar, too, has an interest in obtaining convenient relief in Michigan because the contaminated paper mill waste was created, transported, and dumped at the composting site in Michigan, from where the indemnification claims arise. And instead of having two trials in two different countries over the same controversy, it is most efficient to hold one trial in Michigan. Therefore, the substantial connection between Terrico's activities and Michigan makes exercise of jurisdiction over Terrico reasonable, satisfying the third due process requirement for personal jurisdiction.

The trial court concluded otherwise primarily because it attributed Techni-Comp Environmental's activities to Techni-Comp, Inc. As previously discussed, however, viewing the evidence in a light most favorable to Domtar and resolving conflicting evidence in Domtar's favor compels us to conclude for purposes of these appeals that Techni-Comp Environmental's activities were Terrico's. The trial court also pointed to what it characterized as the lack of evidence that a final indemnity agreement was reached in 1997 or 1998, but that is a question going to the legal merits of Domtar's indemnification claims rather than whether exercising personal jurisdiction over Terrico would violate its due-process rights. See *WH Froh*, 252 Mich App at 230-233 (due process satisfied where defendant "attempt[ed] to negotiate a trucking service agreement to be performed in Michigan" allegedly causing plaintiffs' injuries in Michigan). Terrico had "minimum contacts" with Michigan. See *id.* Therefore, the trial court erred by finding that the exercise of limited personal jurisdiction over Terrico was inconsistent with due process.

## IV. CONCLUSION

To summarize, Domtar made out a prima facie case that Terrico engaged in the transaction of business within the state, and exercising limited personal jurisdiction over Terrico under the circumstances shown does not violate Terrico's right to due process. Therefore, the trial court erred by granting Terrico's motions for summary disposition for lack of personal jurisdiction.

Reversed and remanded for further proceedings consistent with this opinion. Domtar may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Anica Letica
/s/ Daniel S. Korobkin

-11-